837 So.2d 794 (2003)
Dennie MOORE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01497-COA.
Court of Appeals of Mississippi.
February 18, 2003.
*796 Edmund J. Phillips, Newton, attorney for appellant.
Office of the Attorney General, by Scott Stuart, attorney for appellee.
Before McMILLIN, C.J., IRVING AND MYERS, JJ.
McMILLIN, C.J., for the court.
¶ 1. Dennie Moore was convicted of manslaughter following a jury trial in the Leake County Circuit Court and was sentenced to serve ten years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Moore appeals and raises two issues for consideration. First, he contends that the delay between the time of his arrest and subsequent trialwhich was shown to span the period of March 1997 to September 2001 constituted a denial of his constitutionally-protected right to a speedy trial. Alternatively, he claims that certain inculpatory statements made by him and introduced into evidence at trial should have been excluded and that their wrongful admission violated his Fifth Amendment right against self-incrimination. Finding no error as to either issue, we affirm the conviction and judgment of sentence.

I.

Facts
¶ 2. In March of 1997, Danny Crossland was shot to death under circumstances that, based upon the initial investigation by law enforcement officials, implicated Dennie Moore as the person who fired the fatal shots. The shooting appeared to have followed a verbal altercation between Moore and Crossland. Investigating officers arrested Moore shortly after the shooting incident; however, Moore was not formally indicted for the crime until May 9, 2001. He was tried and convicted in a trial that commenced on September 6, 2001.
¶ 3. There is evidence in the record that the case against Moore had been presented to several grand juries in the period *797 from 1997 until mid-2001, but that the grand juries had declined to return a true bill because of the State's inability to produce several purported eyewitnesses to the crime; namely, Tom Wiggington, Carnice Moore, and Jerry Pike. There was also testimony in the record that, after a new Sheriff of Leake County assumed office in January 2000, a different investigator was assigned the Crossland homicide case. This investigator was informed approximately a year later by Crossland's sister that an individual named Chris Smith and his mother, Martha Ogletree, were also eyewitnesses to the shooting and that Chris Smith was, at the time, confined in the Scott County jail. Acting on this information, the investigating officer interviewed these purported eyewitnesses to assess the worth of their evidence. The ultimate outcome was that the case was once again presented to a grand jury in May 2001. Smith and Ogletree both testified before that grand jury. Based on that presentation, the grand jury returned an indictment charging Moore with murder.
¶ 4. In August of 2001, Moore moved to quash the indictment against him on the basis that his constitutional right to a speedy trial had been violated. The trial court denied the motion after a hearing conducted on August 30, 2001. The trial on the merits commenced on September 6, 2001, and at its conclusion, the jury found Moore guilty of the lesser offense of manslaughter.

II.

Speedy Trial Claim
¶ 5. The Mississippi Supreme Court has stated that speedy trial claims necessarily entail questions of fact regarding "whether the trial delay rose from good cause." DeLoach v. State, 722 So.2d 512 (¶ 12) (Miss.1998). This Court must uphold the trial court's findings on the issue of speedy trial where supported by "substantial, credible evidence; [but] if no probative evidence supports the trial court's finding[s] ...," our duty is to reverse. Ross v. State, 605 So.2d 17, 21 (Miss.1992). As in other cases in which the trial court must make factual determinations, our Court reviews those findings using the "clearly erroneous" standard. Stokes v. State, 548 So.2d 118, 122 (Miss. 1989).
¶ 6. The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article 3, Section 26 of the Mississippi Constitution of 1890. An alleged violation of the constitutional right to a speedy trial is examined under the four part test first announced in Barker v. Wingo, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors, which must be balanced in light of all surrounding circumstances, are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) any prejudice to the defendant resulting from the delay. Id. at 533, 92 S.Ct. 2182; Sharp v. State, 786 So.2d 372 (¶ 15) (Miss.2001). We now proceed to examine each factor individually.

A.

Length of Delay
¶ 7. In evaluating a speedy trial issue arising under general constitutional considerations, as opposed to Mississippi's speedy trial statute (Miss.Code Ann. § 99-17-1 (Rev.2000)), the commencement of the period begins when a person is "accused." This can be an arrest, an indictment, or any formal charge, whichever is the first to occur. Doggett v. United States, 505 U.S. 647, 654-55, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (stating indictment six years before arrest started *798 speedy trial considerations); United States v. Marion, 404 U.S. 307, 313-15, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (stating arrest or formal charges begin speedy trial period). In Mississippi, this key date is construed to be the date of arrest. Taylor v. State, 672 So.2d 1246, 1257 (Miss.1996). Moore was arrested on March 21, 1997. He was not brought to trial on the charges until September, 2001over four and one-half years later. A presumption of prejudice arises any time the delay is for more than eight months. Sharp v. State, 786 So.2d 372 (¶ 15) (Miss.2001). The span of time from arrest to trial in this case far exceeded the presumptively prejudicial period. That factor clearly must be weighed in favor of Moore.

B.

The Reasons for the Delay
¶ 8. The only period of delay during this prolonged period that can fairly be attributed to an intentional act by Moore is the brief period from the indictment until trial began. On May 15, 2001less than a week after indictmentMoore agreed to an order continuing the trial of the case until the next term of court. The cause of the extended delay from late 1997 until mid-2001 plainly lies in the fact that the State did not produce for the various grand juries convened in the interim evidence satisfactory to convince those bodies that a trial was warranted.
¶ 9. At a hearing on Moore's motion to dismiss the indictment, the State produced several witnesses who related the problems that investigators were having in attempting to locate those persons believed to have information regarding the circumstances of the incident. There was further evidence that, once the principal investigator became aware of the location of Chris Smith, the State pursued the prosecution of the case with a reasonable measure of diligence. Moore did not counter this evidence with any showing of lack of diligence on the part of State officials in their efforts to locate and procure the testimony of persons believed to have critical eyewitness evidence of the crime. The inability to procure evidence vital to a proper completion of a criminal prosecution, at least so long as that evidence is pursued with some reasonable measure of diligence, does not tend to establish the sort of bad faith delay tactics on the part of the prosecution that call for the enforcement of the constitutional protections afforded a defendant under the Sixth Amendment. While a deliberate attempt to delay the trial would weigh heavily against the government a valid reason, such as a missing witness, should serve to justify appropriate delay. Barker v. Wingo, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

C.

Assertion of the Right to a Speedy Trial
¶ 10. Moore never asserted his right to a speedy trial in the form of a demand. His only action in this regard was his motion to quash the indictment for lack of a speedy trial filed about three months after his indictment. The supreme court has held that where a defendant fails to assert his right to a speedy trial, that failure must be weighed against him. Watts v. State, 733 So.2d 214 (¶ 66) (Miss. 1999). Moore seeks to explain his failure to demand a more speedy resolution of the charges against him by pointing out that he was not under indictment for the great bulk of the time involved in this case and, thus, could not have been subjected to a trial no matter how vigorously he might have demanded it.
¶ 11. We do not find that argument compelling. Moore was arrested for the crime, incarcerated for a time, and then *799 released on bond. If an unindicted suspect who has been the subject of a lawful arrest has a constitutional right to a speedy resolution of the pending charges against him, then we have little doubt in concluding that the suspect may demand that the State proceed with reasonable dispatch to resolve the matter. Whether, in the absence of an existing circuit court criminal proceeding, that demand may be advanced by more informal means, e.g., a letter to the prosecuting attorney, is a matter we need not reach in this instance since Moore made no demand, formal or informal, during the long period between his arrest and indictment that the State proceed by some means to speedily dispose of the pending criminal matter. It appears on this record that Moore was content to remain free on bond without insisting that the pending charges against him be resolved. This is, perhaps, understandable in that Moore may have believed that, with the passing of time, the likelihood of an indictment grew less and less certain. Whether that was, in fact, Moore's thinking on the matter is certainly not clear, but it is certain that it was within his power to make his position definitely known by affirmatively stating it for the record in some manner that would be preserved for subsequent consideration by this Court. In the absence of any such demand, we think that Moore's prolonged failure to demand a speedy resolution of the case must be weighed against his entitlement to relief.

D.

Prejudice to the Defense Occasioned by the Delay
¶ 12. Although there is a presumption of prejudice resulting from a delay of more than eight months, a defendant must still show actual prejudice in order to obtain relief. DeLoach v. State, 722 So.2d 512 (¶ 23) (Miss.1998). In the case before us, Moore seems to rely solely on the presumption of prejudice said to arise by the fact of the long delay itself. It is a fact that he was incarcerated for a little over a year, but the Mississippi Supreme Court has said that incarceration alone does not demonstrate the kind of prejudice that merits relief. McGee v. State, 608 So.2d 1129, 1130 (Miss.1992)
¶ 13. Generally, proof of prejudice beyond incarceration may include such matters as the loss of evidence, death of witnesses, or staleness of the investigation. Sharp v. State, 786 So.2d 372 (¶ 19) (Miss.2001). "The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudices as a result of delay." Hughey v. State, 512 So.2d 4, 11 (Miss.1987). Moore makes no affirmative showing that his defense was prejudiced in any of these ways. Only two witnesses were called on behalf of the defenseone being Moore himself. He makes no claim that other witnesses were somehow lost over the period of delay.
¶ 14. Where the delay is not "intentional or egregiously protracted, and where there is no showing of actual prejudice, the balance is struck in favor of rejecting the defendant's speedy trial claim." Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994). Moore has not demonstrated that the State's long inability to assemble the necessary witnesses to obtain an indictment was either intentional or the result of an inexcusable lack of diligence in the investigative process.
¶ 15. For the foregoing reasons, we conclude, when the relevant considerations are fairly assessed in combination, Moore has failed to demonstrate an entitlement to relief on the claim that his right to a speedy trial was irretrievably violated.

*800 III.

Evidentiary Error Regarding the Admission of Moore's Out-of-Court Statement
¶ 16. Shortly after his arrest and while sitting in the back of the patrol car, Moore was heard by one of the investigating officers to loudly remark something to the effect that "he [Moore] had shot the SOB and if he had any more bullets he would shoot him again." The officer testifying to having heard this remark said that it was not in response to a question from any officer at the scene and that, although Moore had already received his Miranda warnings, he had not been subjected to any form of interrogation. Moore sought to have that evidence excluded on the ground that there was unrebutted testimony that Moore appeared intoxicated at the time of his arrest and that, as a result, his statement could not be considered to be the result of a knowing and voluntary waiver of his right against self-incrimination.
¶ 17. We observe first of all that the issue before us is not governed by the substantial body of law relating to the admissibility of post-arrest statements produced as the result of questioning by investigating officers as that law has developed since the landmark decision of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Even though Moore was in custody, the evidence shows that his statements were spontaneous and were, in no way, the product of police questioning. In Pierre v. State, the Mississippi Supreme Court upheld the trial court's decision to admit a defendant's inculpatory statement overheard by officers after the defendant's arrest on the ground that the remarks were not made in response to a custodial interrogation, and thus, did not invoke the Fifth Amendment protections embodied in Miranda. Pierre v. State, 607 So.2d 43, 51-52 (Miss.1992). The admissibility of the statement, rather than being a matter of constitutional interpretation, was a purely evidentiary one controlled by Mississippi Rule of Evidence 801(d)(2). Oby v. State, 827 So.2d 731, 733(¶ 4) (Miss.Ct.App.2002); Conley v. State, 790 So.2d 773, 787 (¶ 42) (Miss. 2001).
¶ 18. Because the informed nature of the incriminating statement by Moore is not a relevant issue in considering the statement's admissibility, the fact of Moore's alleged intoxication bears only on the probative value of the evidence. To the extent that Moore desired to attempt to convince jurors that his statements were the unreliable pronouncements of a person suffering from excessive alcohol ingestion, he was free to do so, but it was certainly not reversible error to let the jury know of Moore's spontaneous statements made shortly after his arrest that tended to implicate him in the shooting.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.