CARLTON, J.,
 

 for the Court.
 

 ¶ 1. A Warren County grand jury indicted Herman Lee Williams in October 2005 for possession of cocaine, more than ten grams, but less than thirty grams. After a jury trial on September 5-6, 2006, Williams was convicted of the drug possession charge. He was sentenced to serve twenty-four years in the custody of the Mississippi Department of Corrections (MDOC), with the sentence to be served in full without parole or probation. Williams now appeals his conviction, alleging numerous errors in the trial court, which he believes warrant a new trial. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 2. On July 10, 2005, Vicksburg Police Officer Jeremy Brassard was patrolling the area of Vicksburg that includes Navy Circle, a scenic lookout area known as the Overlook. The Overlook is closed after dark, and there are signs posted to notify the public of the closure. As Officer Bras-sard patrolled the area, he noticed a couple of cars parked at the Overlook. As he approached, one car drove away, but the other car stayed. Officer Brassard used his spotlight to look into the car and asked the driver for his information. The driver, Williams, produced a learner’s permit and the title and insurance for the vehicle. He did not have a driver’s license.
 

 ¶ 3. Officer Brassard asked Williams to exit the car. Upon exiting the car, Williams ran down the hill, away from the officer. Officer Brassard noticed Williams reach into his pocket as he ran; Williams pulled out a cellophane bag, which he threw to the ground. Officer Brassard was able to catch up to Williams and search him. Other officers subsequently arrived at the scene and assisted Officer Brassard in his search for the cellophane bag. The bag contained a substance that was later determined to be cocaine. Williams was arrested.
 

 ¶ 4. Upon his arrest, Williams was taken to the Warren County jail. The Mississippi Department of Corrections (MDOC) put
 
 *500
 
 a hold on Williams due to an earned-release-supervision violation. Williams was released from the Warren County jail and transported by the MDOC to the Central Mississippi Correctional Facility in Pearl. He was transferred on August 16, 2005, to the South Mississippi Correctional Institution in Leaksville. Williams was indicted on October 19, 2005, by a Warren County grand jury for possession of cocaine, more than ten grams, but less than thirty grams, which is the charge before this Court. The Warren County district attorney was informed that Williams was in the custody of the MDOC on an unrelated charge. On October 31, 2005, the Warren County District Attorney’s Office filed a detainer to obtain custody of Williams for the possession charge upon his release from the MDOC. Williams was subsequently released on February 28, 2006, to Warren County authorities. Williams was then released on bond on March 1, 2006, for the current possession charge. On June 15, 2006, Williams was arrested on a separate charge for the sale of cocaine, for which he was denied bond. He was arraigned on July 21, 2006, on the possession charge before this Court. At his arraignment, Williams asserted his right to a speedy trial for the first time. On August 10, 2006, he filed a motion to dismiss the possession charge, alleging that he was denied his right to a speedy trial. On September 18, 2006, his trial began.
 

 ¶ 5. On appeal, Williams alleges ten separate errors. Because they are similar, Williams’s final four issues have been combined. Williams argues (1) he was denied his right to a speedy trial; (2) the state court did not have jurisdiction; (3) the sentence is unconstitutional and disproportionate; (4) the trial court improperly found that Williams opened the door on his prior convictions; (5) he was denied advice of counsel and due process; (6) the finding of guilt was against the overwhelming weight of the credible evidence and/or is contrary to the law or the right of the evidence; and (7) the trial court erred in granting and denying certain jury instructions and in redacting portions of defense instructions.
 

 ¶ 6. Finding no reversible error, we affirm the trial court.
 

 DISCUSSION
 

 I. Whether Williams was denied his right to a speedy trial.
 

 ¶ 7. Williams claims that because he was not tried for the possession charge until fourteen months after his arrest, he was denied a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution, as well as Article 3, section 26 of the Mississippi Constitution.
 

 ¶ 8. Our standard of review when analyzing a trial court’s findings regarding a speedy trial violation is as follows:
 

 The Mississippi Supreme Court has stated that speedy trial claims necessarily entail questions of fact regarding “whether the trial delay rose from good cause.”
 
 DeLoach v. State,
 
 722 So.2d 512(¶ 12) (Miss.1998). This Court must uphold the trial court’s findings on the issue of speedy trial where supported by “substantial, credible evidence; [but] if no probative evidence supports the trial court’s findings ...,” our duty is to reverse.
 
 Ross v. State,
 
 605 So.2d 17, 21 (Miss.1992). As in other cases in which the trial court must make factual determinations, our Court reviews those findings using the “clearly erroneous” standard.
 
 Stokes v. State,
 
 548 So.2d 118, 122 (Miss.1989).
 

 Moore v. State,
 
 837 So.2d 794, 797 (Miss. Ct.App.2003).
 

 ¶ 9. A defendant’s right to a speedy trial attaches the day he is arrest
 
 *501
 
 ed.
 
 Thorson v. State,
 
 653 So.2d 876, 889 (Miss.1994) (citing
 
 Spencer v. State,
 
 592 So.2d 1382, 1387 (Miss.1991);
 
 Handley v. State,
 
 574 So.2d 671, 674 (Miss.1990);
 
 Smith v. State,
 
 550 So.2d 406, 408 (Miss. 1989)). Thus, Williams’s right to a speedy trial attached on July 10, 2005. To determine whether a defendant’s constitutional right to a speedy trial has been violated, we must consider the four factors set forth by the United States Supreme Court in
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) the length of the delay, (2) the reason for the delay, (3) the defendant’s timely assertion of his right to a speedy trial, and (4) the resulting prejudice to the defendant.
 
 Thorson,
 
 653 So.2d at 890 (citing
 
 Barker,
 
 407 U.S. at 530, 92 S.Ct. 2182)). Ultimately, “no one factor is dispositive. The totality of the circumstances must be considered.”
 
 Fisher v. State,
 
 532 So.2d 992, 995 (Miss.1988) (citation omitted).
 

 a.Length of the Delay
 

 ¶ 10. The length of the delay triggers analysis of the other three factors, and the delay must be “presumptively prejudicial” to the defendant for the analysis to continue beyond this factor.
 
 Atterberry v. State,
 
 667 So.2d 622, 626 (Miss. 1995) (citations omitted). The trial in Williams’s case did not begin until fourteen months after his arrest. The Mississippi Supreme Court has held that in non-capital cases, delays of eight months or more are presumptively prejudicial.
 
 Thorson,
 
 653 So.2d at 890 (citing
 
 Spencer,
 
 592 So.2d at 1387). Because Williams’s delay of fourteen months is considered presumptively prejudicial, our analysis must continue to the other
 
 Barker
 
 factors.
 

 b. Reason for the Delay
 

 ¶ 11. The record is silent on the reason for the delay in bringing Williams to trial. The defendant was in custody for most of the time between his arrest and trial. He served some time after arrest for an earned-release-supervision violation. After that, he was jailed after being arrested on a separate drug charge while out on bond.
 

 ¶ 12. The trial court found that the delay was caused by the defendant because he was in the State’s custody on other charges between arrest and trial; therefore, the trial court did not count most of the time that the defendant was in custody it its analysis of the speedy trial violation. The Mississippi Supreme Court has held “[t]he mere fact that the defendant is in custody for another crime is generally not a sufficient reason for delaying a trial.”
 
 Fisher,
 
 532 So.2d at 995. Because there is no reason given by the State for the delay in bringing Williams to trial, this factor should be weighed against the State and in favor of Williams.
 
 Brengettcy v. State,
 
 794 So.2d 987, 993(¶ 13) (Miss.2001) (citation omitted).
 

 c.
 
 Defendant’s Assertion of Right to Speedy Trial
 

 ¶ 13. Williams did assert his right to a speedy trial at his arraignment on July 21, 2006. His trial was set at that time and commenced within two months of his asserting the right.
 
 [1]
 
 Williams asserts that it
 
 *502
 
 is not the duty of the accused to bring himself to trial. While it is not the duty of the accused to bring himself to trial, the analysis of this prong of the
 
 Barker
 
 test is weighed more heavily in his favor if he has demanded a speedy trial.
 
 Brengettcy,
 
 794 So.2d at 994(1117) (quoting
 
 Jaco v. State,
 
 574 So.2d 625, 632 (Miss.1990)).
 

 ¶ 14. Williams waited more than one year from the time of his arrest to assert his right to a speedy trial. He asserted the right to a speedy trial on July 21, 2006, at his arraignment. On August 10, 2006,. Williams filed a motion to dismiss for denial of a speedy trial, which was denied. His trial began on September 18, 2006, within two months of his asserting his right to speedy trial.
 

 ¶ 15. Our supreme court has, in several cases, weighed this factor against an accused when he has waited a significant amount of time before demanding a speedy trial.
 
 See Wall v. State,
 
 718 So.2d 1107, 1113(¶ 25) (Miss.1998) (holding that this factor weighed against the accused whose assertion of the right to speedy trial did not come until two months before his trial began). In
 
 Noe v. State,
 
 616 So.2d 298, 801 (Miss.1993), our supreme court held that the defendant’s failure to assert his right to a speedy trial until nearly one year after his arrest weighed heavily against him on this prong of the
 
 Barker
 
 test.
 

 ¶ 16. The State argues that because Williams waited approximately eleven months after his arrest to assert his right to a speedy trial, this factor should be weighed against him. Williams was indicted in October 2005, but was not served a copy of the indictment until June 14, 2006. Regardless of when he was indicted, Williams had notice that he had been arrested on the charges. In
 
 Moore,
 
 this Court weighed this factor against a defendant who had waited approximately four years from the date of his arrest to demand a speedy trial even though he had not been formally indicted until three months before he made the demand for a speedy trial.
 
 Moore,
 
 837 So.2d at 798-99 (¶¶ 10-11). The Court in
 
 Moore
 
 reasoned as follows for weighing this factor against the defendant:
 

 If an unindicted suspect who has been the subject of a lawful arrest has a constitutional right to a speedy resolution of the pending charges against him, then we have little doubt in concluding that the suspect may demand that the State proceed with reasonable dispatch to resolve the matter. Whether, in the absence of an existing circuit court criminal proceeding, that demand may be advanced by more informal means, e.g., a letter to the prosecuting attorney, is a matter we need not reach in this instance since Moore made no demand, formal or informal, during the long period between his arrest and indictment that the State proceed by some means to speedily dispose of the pending criminal matter. It appears on this record that Moore was content to remain free on bond without insisting that the pending charges against him be resolved. This is, perhaps, understandable in that Moore may have believed that, with the passing of time, the likelihood of an indictment grew less and less certain. Whether that was, in fact, Moore’s thinking on the matter is certainly not clear, but it is certain that it was within his power to make his position definitely
 
 *503
 
 known by affirmatively stating it for the record in some manner that would be preserved for subsequent consideration by this Court. In the absence of any such demand, we think that Moore’s prolonged failure to demand a speedy resolution of the case must be weighed against his entitlement to relief.
 

 Id.
 
 at (¶ 11). Williams was certainly aware of the possibility that charges would be brought against him as a result of his arrest. Williams did not seek any resolution of the charges until after he was served with the indictment in June 2006. Accordingly, we weigh this factor against Williams and in favor of the State.
 

 d. Prejudice to the Defendant
 

 ¶ 17. The defendant argues that he was prejudiced by the delay between his arrest and trial because certain witnesses were no longer available to him for trial testimony and because he was imprisoned for over ten months of the thirteen-month delay. It is not necessary for Williams to make an affirmative showing of prejudice to show that his constitutional right to a speedy trial has been violated.
 
 Flores v. State,
 
 574 So.2d 1314, 1323 (Miss. 1990). The State has to show a lack of prejudice to the defendant in order to prevail on this factor.
 
 See Jasso v. State,
 
 655 So.2d 30, 35 (Miss.1995).
 

 ¶ 18. The right to a speedy trial is designed to protect three interests: (1) “to prevent oppressive pretrial incarceration”; (2) “to minimize anxiety and concerns of the accused”; and (3) “to limit the possibility that the defense will be impaired.”
 
 State v. Magnusen,
 
 646 So.2d 1275, 1284 (Miss.1994) (quoting
 
 Barker,
 
 407 U.S. at 532, 92 S.Ct. 2182)). Williams was incarcerated for ten months of the thirteen-month delay. However, he was not incarcerated on the drug possession charge at issue. After his initial arrest for drug possession, Williams was transferred to the custody of the Mississippi Department of Corrections, which had placed a hold on Williams due to an earned-release-supervision violation. More than seven months later, Williams was released back into the custody of Warren County officials. He was released three days after that on bond for the drug possession charge. Less than five months later, Williams was arrested on a separate charge of sale of cocaine and denied bond; he has been jailed since that time. The State cites
 
 Brengettcy,
 
 794 So.2d at 995(¶ 20) for the proposition that because Williams was already jailed on other charges, “any prejudice that could have arisen merely from interference with his liberty is alleviated.... ”
 
 See also Winder v. State,
 
 640 So.2d 893, 895 (Miss.1994) (holding that when a defendant is already serving a jail sentence or is in jail on an unrelated matter, he suffers no prejudice based
 
 solely
 
 on the continued incarceration). We find no oppressive pretrial incarceration based on Williams being jailed on other charges during the delay between his arrest and trial.
 

 ¶ 19. The second interest to consider is whether the delay between arrest and trial caused Williams any anxiety or concern. Williams has not argued that he suffered any anxiety or concern as a result of the delay between his arrest and trial.
 

 ¶20. The third interest protected by the right to a speedy trial, minimizing the possibility that the defense will be impaired, is the most serious consideration.
 
 Woodson v. State,
 
 845 So.2d 740, 743(¶ 17) (Miss.Ct.App.2003) (quoting
 
 Sharp v. State,
 
 786 So.2d 372, 381(¶ 19) (Miss.2001)). Williams claims that his incarceration hampered any effort to monitor and keep in contact with two witnesses. Again, Williams was not being held in jail on the drug possession charge. He was finishing a sentence with the MDOC, and then he
 
 *504
 
 was held without bond on another drug charge. The witnesses he tried to call in his defense were unavailable. Williams asserts that their testimony would have shown that the officer was mistaken as to how many cars were present at the Overlook that night and that they did not see Williams throw the drugs. However, Williams was able to call two witnesses, Renee White and Lash Rogers, who did testify on his behalf that there were more cars there that night, and they did not see Williams throw the drugs. Further, Williams testified on his own behalf that there were other cars present and that he did not throw the drugs. As the State argues, any other testimony would have been cumulative.
 
 See Woodson,
 
 845 So.2d at 743(¶ 18). Because there has been no actual prejudice to Williams as a result of the delay between arrest and trial, this factor favors the State.
 

 ¶ 21. Balancing the factors, we find that the analysis of the
 
 Barker
 
 factors favors the State. Therefore, this issue is without merit.
 

 II. Whether the trial court had jurisdiction.
 

 ¶ 22. In his second assignment of error, Williams contends that the State lacked jurisdiction to prosecute the charge against him. Williams was arrested on Navy Circle, which is property owned by the United States. Essentially, Williams argues that for the State to have jurisdiction, either the United States had to convey concurrent jurisdiction to the State, or the State had to retain concurrent jurisdiction. Williams claims that the State did not retain concurrent jurisdiction at the time of the conveyance because the property was conveyed to the United States by private citizens, not by the State. Williams provided copies of deeds on record in Warren County to show that the land was acquired by the United States in 1899 from private individuals, rather than from the State of Mississippi. Williams argues that the United States did not convey concurrent jurisdiction to the State, and the State never retained concurrent jurisdiction. Therefore, he argues, the State did not have jurisdiction to prosecute his case. Williams’s argument fails.
 

 ¶ 23. Williams claims that the statutes relied on by the State to prove jurisdiction are inapplicable in his case because they were not in effect in 1899 when the conveyances were made. In its brief to this Court, the State relied on Mississippi Code Annotated sections 3-5-3 and 3-5-9 (Rev. 2002) and sections 2395 and 2396 of the Mississippi Code of 1906. Language similar to that found in section 3-5-9
 
 [2]
 
 can be found in Mississippi Code section 2178 (1892), which was in effect when the land was conveyed to the United States by private citizens. Section 2178 provides the following:
 

 The concession of jurisdiction to the United States over any part of the territory of the state, heretofore or hereafter made, shall not prevent the execution on such land of any process, civil or criminal, under the authority of this state, nor prevent the laws of this state from operating over such lands; saving to the United States security to its property within the limits of the jurisdiction ceded, and exemption of the same, and of
 
 *505
 
 such land from taxation under the authority of this state during the continuance of the cession.
 

 ¶ 24. The United States Supreme Court held in
 
 Surplus Trading Co. v. Cook,
 
 281 U.S. 647, 650, 50 S.Ct. 455, 74 L.Ed. 1091 (1930), that ownership of land by the United States does not automatically give the United States exclusive jurisdiction. Moreover, the Supreme Court stated the following:
 

 It is not unusual for the United States to own within a State lands which are set apart and used for public purposes.
 
 Such ownership and use without more do not withdraw the lands from the jurisdiction of the State.
 
 On the contrary, the lands remain part of her territory and within the operation of her laws, save that the latter cannot affect the title of the United States or embarrass it in using the lands or interfere with its right of disposal.
 

 Id.
 
 (emphasis added). Furthermore, the United States Supreme Court has stated: “We made clear that ‘the State is free to enforce its criminal and civil laws’ on federal land so long as those laws do not conflict with federal law.”
 
 California Coastal Comm’n v. Granite Rock Co.,
 
 480 U.S. 572, 580, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987) (quoting
 
 Kleppe v. New Mexico,
 
 426 U.S. 529, 543, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976)). The State had jurisdiction to arrest Williams and bring him to trial. This issue is without merit.
 

 III. Whether the sentence is unconstitutional and disproportionate.
 

 ¶ 25. Williams’s third assignment of error alleges that his sentence is unconstitutional and disproportionate. Williams was convicted at trial of possession of cocaine having a weight of more than ten grams but less than thirty grams, more precisely, 10.7 grams. Williams has two prior felony convictions, and he was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). Under this statute, he was sentenced to serve twenty-four years in prison without eligibility for probation or parole. Williams argues that he is simply another casualty of the losing war on drugs and that the twenty-four-year sentence is cruel and unusual. We disagree.
 

 ¶ 26. Our standard of review for a trial court’s imposition of a sentence is abuse of discretion. “Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.”
 
 Nichols v. State,
 
 826 So.2d 1288, 1290(¶ 10) (Miss.2002). Though Williams’s sentence may seem harsh in light of sentences received by others convicted of drug possession, his sentence fits within the statutory maximum. Therefore, absent an abuse of discretion, the sentence is beyond the reach of our appellate review.
 

 ¶ 27. Williams was sentenced under Mississippi Code Annotated section 99-19-81, which states as follows:
 

 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere,
 
 shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
 

 (Emphasis added).
 

 ¶ 28. Williams argues that his sentence is disproportionate and, thus, unconstitu
 
 *506
 
 tional based on the United States Supreme Court’s holding in
 
 Solem v. Helm,
 
 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which established a test to determine whether a sentence is disproportionate and, thus, cruel and unusual. The Supreme Court set forth three factors to consider when analyzing a sentence for disproportionality, which are: “(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.”
 
 Id.
 

 ¶ 29. The Supreme Court overruled its holding in
 
 Solem
 
 in
 
 Harmelin v. Michigan,
 
 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), to the extent that
 
 So-lem
 
 found any proportionality guarantee in the Eighth Amendment.
 
 Kelly v. State,
 
 947 So.2d 1002, 1004(115) (Miss.Ct.App. 2006). This Court has explained the effect of the Supreme Court’s rulings in
 
 Solem
 
 and
 
 Harmelin,
 
 stating: “In light of
 
 Hanmelin,
 
 it appears that
 
 Solem
 
 is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of ‘gross dis-proportionality.’ ”
 
 Kelly,
 
 947 So.2d at 1004(¶ 5).
 

 ¶ 30. Williams also cites to
 
 Clowers v. State,
 
 522 So.2d 762, 763-65 (Miss.1988), a case in which the Mississippi Supreme Court affirmed a trial judge’s decision to depart from the mandatory sentence required for a habitual offender convicted of forgery.
 
 Id.
 
 The trial judge felt that the mandatory sentence in that case was disproportionate to the crime.
 
 Id.
 
 However, this Court has previously held with respect to the holding in
 
 Clowers,
 
 that
 
 “Clowers
 
 is ‘not the rule, but the exception.’ ”
 
 Oby v. State,
 
 827 So.2d 731, 734(¶ 9) (Miss.Ct.App. 2002) (citing
 
 Bell v. State,
 
 769 So.2d 247, 252(¶ 12) (Miss.Ct.App.2000)).
 

 ¶ 31. Williams’s sentence does not lead this Court to an inference of gross dispro-portionality; therefore, no proportionality analysis is necessary. Furthermore, our supreme court has upheld harsher sentences for drug possession.
 
 See Wall v. State,
 
 718 So.2d 1107, 1114-15(¶ 30) (Miss. 1998) (upholding a sentence of life without parole for possession of a controlled substance for a habitual offender).
 
 See also Tate v. State,
 
 946 So.2d 376, 386-87 (¶¶ 32-34) (Miss.Ct.App.2006) (upholding a sixty-year sentence for possession of marijuana where defendant was sentenced under Mississippi Code Annotated section 41-29-147 (Rev.2005)
 
 and
 
 as a habitual offender under section 99-19-81).
 

 ¶32. This Court has explained that “[t]he correct proportionality analysis for a habitual offender sentence does not consider the present offense alone, but within the habitual offender statute.”
 
 Oby,
 
 827 So.2d at 735(¶ 12) (citing
 
 Bell,
 
 769 So.2d at 251(¶ 9)). Williams was convicted of violating Mississippi Code Annotated section 41-29-139(c)(l)(D) (Rev.2005) for which the maximum term of incarceration is twenty-four years. Williams was properly sentenced to serve twenty-four years without possibility of parole or probation under section 99-19-81. This issue is without merit.
 

 IV. Whether the trial court improperly found that Williams had opened the door on his prior convictions.
 

 ¶ 33. Prior to the trial beginning, the Court granted Williams’s motion to prevent the State from mentioning Williams’s prior criminal record during the trial in the presence of the jury. The trial court added that the State could bring in the prior criminal history if Williams were to “open the door” to his criminal history by somehow bringing his history into ques
 
 *507
 
 tion. While being questioned by his own counsel, Williams testified: “I’ve been working on a job for 15 years. I don’t smoke drugs.” The State argued to the trial court that this statement opened the door on Williams’s criminal record, and the trial court granted the State permission to cross-examine Williams about the prior convictions.
 

 ¶ 34. “The standard of review for this Court regarding the admissibility of evidence is abuse of discretion of the trial court and reversal may be had only where that discretion has been abused. Unless the trial judge’s discretion is so abused as to be prejudicial to the accused, an appellate court will not reverse. However, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence.”
 
 Stubbs v. State,
 
 878 So.2d 130, 134(¶ 7) (Miss.Ct.App. 2004) (internal citations omitted).
 

 ¶ 35. The supreme court has explained how evidence of prior convictions may be admitted into evidence as follows:
 

 Where an accused, on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination, and this is so though it would bring out that the accused may have committed anóther crime. Normal impeachment applies when the defendant, on direct examination, makes blanket statements which open the door for impeachment. Once this door to the defendant/witness’ criminal record has been opened, the evidence used by the State in response is more like rebuttal evidence than impeachment.
 

 Johnson v. State,
 
 666 So.2d 499, 503 (Miss. 1995) (internal quotations and citations omitted).
 

 ¶ 36. Williams argues that because he was charged with possession of cocaine, and because cocaine is normally snorted and not smoked, his statement could not be considered as a blanket response denying drug use in general, just a denial that he had smoked drugs. We do not see any distinction. It was within the trial judge’s discretion to allow the cross-examination regarding the prior convictions, because Williams sufficiently opened the door by claiming that he did not “smoke drugs.”
 

 ¶37. Williams argues further that the trial judge did not weigh the probative value of the evidence against the prejudicial effect of the admission under Mississippi Rule of Evidence 403, which states:
 

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 

 However, the trial judge did weigh the probative value of the prior convictions against the prejudicial effect. Outside the presence of the jury, the trial court ruled on the State’s motion to bring in the prior convictions:
 

 THE COURT: Motion for mistrial overruled. The Court finds that defendant opened the door, that he’s made that an issue, and whether — although the Court previously ruled — the D.A. said he wasn’t going to even get into those prior convictions unless he opened the door the Court so ruled, and the Court has ruled that he has now, on his own, opened the door in response to a question. So....
 

 BY THE STATE: And is that after a 403 analysis, Your Honor?
 

 THE COURT: Yes. The Court is weighing the prejudicial effect. He’s now made it an issue, and the prejudicial effect will not outweigh the probative value of that comment. It goes to the
 
 *508
 
 whole basis of his credibility. He’s made it an issue.
 

 The trial judge did not abuse his discretion in finding that Williams opened the door to his prior convictions. This issue is without merit.
 

 V. Whether Williams was denied advice of counsel and due process.
 

 ¶38. Williams next argues that after the judge ruled that Williams had, in fact, opened the door to his prior convictions, he should have been allowed to consult with his attorney before cross-examination. Williams claims the trial judge’s refusal to allow him to speak with counsel denied him advice of counsel and due process. Williams claims that he needed to speak with counsel to discuss the ramifications of and to prepare for the questions concerning his prior convictions which Williams believed he would not be questioned about. Williams admits that he is unable to find a case on point wherein a criminal defendant was granted the right to confer with counsel while on cross-examination. Williams cites
 
 Geders v. United States,
 
 425 U.S. 80, 91-92, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), where the Supreme Court held that preventing a defendant from consulting with his attorney during an overnight recess violated the defendant’s Sixth Amendment rights. That case dealt with an overnight recess, not a short break between direct and cross-examination. Further, the Supreme Court limited its holding, stating, “We need not reach, and we do not deal with, limitations imposed in other circumstances.”
 
 Id.
 
 at 91, 96 S.Ct. 1330.
 

 ¶ 39. The Mississippi Supreme Court has addressed the issue, holding that “[a] defendant and his attorney do not have a right to consult indiscriminately without leave of the court as one must adhere to orderly courtroom decorum and procedure.”
 
 Simmons v. State,
 
 805 So.2d 452, 486(¶ 84) (Miss.2001) (citing
 
 Pendergraft v. State,
 
 191 So.2d 830, 834 n. 1 (Miss.1966)). The State argues, more convincingly, that Williams had no right to consult with counsel before being cross-examined. The supreme court has held that:
 

 [w]hen a defendant becomes a witness, he has no constitutional right to consult with his lawyer ichile he is testifying.
 
 He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel’s advice .... Accordingly, it is entirely appropriate for a trial judge to decide, after listening to the direct examination of any witness, whether the defendant or a nondefendant, that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer.
 

 Puckett v. State,
 
 879 So.2d 920, 956 (Miss. 2004) (quoting Perry
 
 v. Leeke,
 
 488 U.S. 272, 280-82,109 S.Ct. 594, 102 L.Ed.2d 624 (1989)) (emphasis added).
 

 ¶ 40. The trial judge’s refusal to allow Williams to consult with his attorney before being cross-examined was appropriate. This issue is without merit.
 

 VI. Whether the verdict was against the overwhelming weight of the evidence.
 

 ¶ 41. Williams next argues that the verdict was against the overwhelming weight of the evidence. Our supreme court has set forth the standard of review for assertions that a verdict is against the overwhelming weight of the evidence as follows:
 

 In determining whether a jury verdict is against the overwhelming weight of the
 
 *509
 
 evidence, this Court must accept as trae the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those eases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
 

 Montana v. State,
 
 822 So.2d 954, 967-68(¶ 61) (Miss.2002) (internal citation omitted). Williams argues that the only evidence that he had possession of the drugs found at the Overlook was the testimony of Officer Brassard. Officer Brassard testified that he saw Williams remove the bag from his pocket and throw it on the ground before fleeing on foot. After catching Williams, the police officers found the bag Williams threw down; they photographed it and collected it as evidence. The testimony of Adrian Hall of the Mississippi Crime Laboratory confirmed that the substance in the bag was cocaine, and its weight was 10.7 grams.
 

 ¶ 42. Williams claims that Officer Brassard’s testimony was contradictory. However, Officer Brassard’s testimony was not contradictory, but it was
 
 contradicted
 
 by defense witnesses, who testified that there were more cars at the Overlook than Officer Brassard testified as to seeing. However, “[t]he jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 Ford v. State,
 
 737 So.2d 424, 425(¶8) (Miss.Ct.App.1999) (citing
 
 McClain v. State,
 
 625 So.2d 774, 781 (Miss.1993)). Furthermore, “the testimony of a single witness is sufficient to support a conviction.”
 
 Id.
 
 (citing
 
 Doby v. State,
 
 532 So.2d 584, 590 (Miss.1988)). Where evidence is conflicting, “the court should assume that the jury resolved the conflict in a manner consistent with the verdict.”
 
 Id.
 
 (citing
 
 Gossett v. State,
 
 660 So.2d 1285, 1294 (Miss.1995)).
 

 ¶ 43. In reviewing the evidence and accepting the evidence that supports the verdict as being true, we do not find that the jury’s verdict was against the overwhelming weight of the evidence. This issue is without merit.
 

 VII. Whether the trial court erred in modifying and denying certain jury instructions.
 

 ¶ 44. “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Johnson v. State,
 
 823 So.2d 582, 584(¶ 4) (Miss. Ct.App.2002).
 

 a. Single Juror Instmction (Jury Instruction D-2)
 

 ¶ 45. Williams claims that the trial court erred in modifying jury instruction D-2, his “single juror” instruction. The instruction, as given by the trial court, read as follows:
 

 The verdict of the jury must represent the considered judgment of each juror. In order to return a verdict, it will be necessary that each juror agree. In other words, all twelve jurors must agree before returning a verdict in this case. It is your sworn duty as jurors to consult with one another and to deliberate in view of reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not
 
 *510
 
 hesitate to re-examine your own views and change your opinion, if convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. If there is any juror who is not convinced beyond a reasonable doubt of the defendant’s guilt, it is his or her duty to vote “Not Guilty.”
 

 The trial court redacted the language, “even though it may cause a mistrial in this case” from the final sentence of the instruction, but otherwise left the instruction as Williams proposed it. Williams cites
 
 Edlin v. State,
 
 523 So.2d 42, 49 (Miss. 1988) and claims that based on this decision, it was reversible error for the trial court to refuse his “single juror instruction.” The court in
 
 Edlin
 
 reversed because the jury was not instructed that their decision had to be unanimous, stating:
 

 In this contention the State is wrong and this case is distinguished from
 
 Mallette
 
 [v.
 
 State,
 
 349 So.2d 546 (Miss. 1977)7, in that the Edlin jury was never instructed that their verdict must be unanimous. Nothing in the court’s instructions remotely resembles the single juror instruction requested by Edlin. Where a jury in a criminal case is not instructed that their verdict must be unanimous, then a single juror instruction is proper and in this case the jury deliberated for an extended period of time without the benefit of either instruction. Therefore, the failure to grant the “single juror instruction” under these circumstances is reversible error.
 

 Id.
 
 Williams’s instruction was not refused; it was modified. The instruction given properly instructed the jurors that their decision had to be unanimous, and “[i]f there [was] any juror who [was] not convinced beyond a reasonable doubt of the defendant’s guilt, it [was] his or her duty to vote ‘Not Guilty.’ ” The language that was redacted was unnecessary. This issue is without merit.
 

 b. Jury Instruction D-S
 

 ¶46. Williams argues that the trial court erred in redacting the language regarding reasonable doubt from this jury instruction. The instruction as given stated:
 

 The Court instructs the jury that you are bound, in deliberating upon this case, to give the defendant the benefit of any reasonable doubt of the defendant’s guilt that arises out of the evidence or want of evidence in this case. It is only when on the whole evidence you are able to say on your oaths, beyond a reasonable doubt, that the defendant is guilty that the law will permit you to find him/her guilty. You might be able to say that you believe him/her to be guilty, and yet, if you are not able to say on your oaths, beyond a reasonable doubt, that he/she is guilty, it is your sworn duty to find the defendant “Not Guilty.”
 

 The trial court redacted the following language from the instruction Williams proposed: “there is always a reasonable doubt of the defendant’s guilt when the evidence simply makes it probable that the defendant is guilty, mere probability of guilt will never warrant you to convict the defendant.” The trial judge removed the language because he believed it to be an attempt to define reasonable doubt. In
 
 Vaden v. State,
 
 965 So.2d 1072, 1074 (¶¶ 3-4) (Miss.Ct.App.2007), this Court ruled that it was not error for a trial court to deny an instruction virtually identical to the instruction proposed by Williams. The Court in
 
 Vaden
 
 stated, “Our supreme court has repeatedly stated that the term ‘reasonable doubt’ defines itself and is not
 
 *511
 
 a proper jury instruction.”
 
 Id.
 
 at (¶ 4) (citations omitted). Again, Williams’s proposed instruction was not refused; it was merely modified to remove the language that attempted to define reasonable doubt. The jury instruction as given adequately instructed the jury that they had to believe, beyond a reasonable doubt, that Williams was guilty. We find no error in the trial court’s modification of the jury instruction. This issue is without merit.
 

 c.
 
 Jwry Instruction D-k
 

 ¶ 47. Again, Williams argues that the trial court erred in redacting language from his proposed jury instruction. The jury instruction as given stated that:
 

 The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving Herman Williams guilty of every material element of the crime which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that Herman Williams is guilty. Herman Williams is not required to prove his innocence.
 

 The language redacted by the trial court read: “The presumption of innocence attends Herman Williams throughout the trial and prevails at its close unless overcome by evidence which satisfied the jury of Herman Williams’s guilt beyond a reasonable doubt.” Again, the jury instruction as given adequately informed the jury that Williams was presumed innocent of the charges and could only be found guilty if the jurors believed in his guilt beyond a reasonable doubt. We find no error in the trial court’s redacting the language. This issue is without merit.
 

 d. Proposed Jury Instruction D-6
 

 ¶ 48. Williams’s final argument is that the trial court erred in granting the State’s jury instruction S-l and denying his instruction D-6. Williams argues that the trial court essentially allowed the jury to find Williams guilty of possession of cocaine without the State proving the element of “knowingly or intentionally.” The jury instruction given required the jury to consider whether Williams “did willfully and feloniously possess cocaine, which is a controlled substance.... ” Williams requested an instruction that required the jury to determine whether Williams “knowingly or intentionally” possessed cocaine, and whether he knew it was cocaine.
 

 ¶ 49. The trial judge found that Williams’s instruction was so similar to instruction S-l that Williams’s instruction was cumulative, finding that “willfully” incorporated “knowingly and intentionally.” Williams argues that the State’s language in instruction S-l leaves out the element of intent. He argues that the statute under which he was charged, Mississippi Code Annotated section 41-29-189(c), contains the language “knowingly or intentionally.” The State argues that the definition of “willful” includes the terms “knowingly” and “intentionally,” and instruction D-6 would have been similar to S-l.
 

 ¶ 60. We are persuaded by the State’s argument. Our supreme court has recognized that the terms are interchangeable. In
 
 Moore v. State,
 
 676 So.2d 244, 246 (Miss.1996), the supreme court held that jury instructions which interchanged words of intent still covered the issue of intent, stating:
 

 This Court has stated that “it is inconceivable that an act willfully done is not also knowingly done.” Stated differently, “willfully” means “knowingly.” Moreover, “wil[l]ful” means nothing more than doing an act intentionally.
 

 (Internal citations omitted). The jury was properly instructed on the level of intent
 
 *512
 
 required to find Williams guilty of possession of cocaine. This issue is without merit.
 

 ¶ 51. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF POSSESSION OF MORE THAN TEN GRAMS BUT LESS THAN THIRTY GRAMS OF COCAINE AND SENTENCE OF TWENTY-FOUR YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The Mississippi Supreme Court amended Rule 8.01 of the Uniform Rules of Circuit and County Court effective July 1, 2008, to provide that criminal matters shall be set for trial at or within sixty days of arraignment. This amendment is effective as to all arraignments on and after July 1, 2008. Hence, it is not applicable to the case currently before the Court. The relevant portion of the amended rule provides as follows:
 

 Arraignment, unless waived by the defendant, shall be held within thirty (30) days after the defendant is served with the indictment. At or within sixty (60) days of
 
 *502
 
 arraignment (or waiver thereof), the court shall enter an order setting a date for trial. Unless good cause be shown, and a continuance granted by written order setting forth the reason for the continuance, an accused shall be brought to trial no later than two hundred seventy (270) days following arraignment (or waiver thereof).
 

 [2]
 

 . Section 3-5-9 contains the following language:
 

 The concession of jurisdiction to the United States over any part of the territory of the state, heretofore or hereafter made, shall not prevent the execution on such land of any process, civil or criminal, under the authority of this state, nor prevent the laws of this state from operating over such land; saving to the United States security to its property within the limits of the jurisdiction ceded.