886 So.2d 734 (2004)
James R. MAYO a/k/a James Ricky Mayo, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01927-COA.
Court of Appeals of Mississippi.
May 11, 2004.
Rehearing Denied August 3, 2004.
Certiorari Denied November 18, 2004.
*735 James A. Williams, Meridian, attorney for appellant.
*736 Office of the Attorney General by John R. Henry, attorney for appellee.
Before SOUTHWICK, P.J., LEE and CHANDLER, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. James Mayo was convicted of robbery by a Lauderdale County Circuit Court jury. On appeal, he claims the following as error: introduction of evidence of his prior criminal record and that Mayo used the money from this robbery to buy cocaine; mention of a "strong arm robbery" by a witness; permitting leading questions on direct examination of the victim; and the giving of allegedly conflicting jury instructions. Mayo also claims that he received ineffective assistance of counsel and that the verdict was not supported by evidence. We find no error and affirm.

FACTS
¶ 2. On August 6, 2001, Charles and Adell Morgan were in their home. Mr. Morgan was eighty-one years old, while his wife was seventy-seven. Around 8:00 p.m., Mr. Morgan answered a knock at the door. A person whom he knew as "Mayo," who worked across the street at the Salvation Army, asked to borrow jumper cables. Mr. Morgan went to put on his shoes before retrieving the cables from his truck. Mayo followed him into the back of the house. At some point, Mayo asked if Mr. Morgan had any money; Morgan said that he did not. Then Mayo asked for his wallet, but Mr. Morgan replied that he did not have one. Mayo insisted.
¶ 3. Upon hearing this exchange, Mrs. Morgan came from another room and asked Mayo to leave the house or she would call the police. She tried to retrieve a portable telephone from the basket of her walker, but Mayo grabbed the telephone. Mayo then held Mr. Morgan by his belt and the back of his pants while leading him around the house. Mr. Morgan decided to give Mayo his wallet. Mayo then demanded Mrs. Morgan's wallet, but she denied having one. Mayo left the house with the telephone and $30-$40 from Mr. Morgan's wallet.
¶ 4. Mr. Morgan used another telephone to call the police. He went outside and learned from a security guard at a nearby business the direction that Mayo had gone. Mr. Morgan gave the investigating officer this information, including the name of "Mayo."
¶ 5. Recalling that he was familiar with a person named Mayo, one of the officers went to the police station and prepared a photographic lineup for Mr. Morgan to view. Mr. Morgan immediately identified Mayo's photograph. The police officer then patrolled the neighborhood and found Mayo sitting on the porch of a home. Mayo was arrested.
¶ 6. Trial was held in August 2002. Mayo was found guilty of robbery and was sentenced to ten years in prison and ordered to pay restitution, fines, and court costs. Mayo appeals.

DISCUSSION

1. Evidence of extraneous matters
¶ 7. Mayo claims that statements made by the prosecutor and the investigating officer improperly revealed that he had a criminal record. This issue was not raised at trial and is therefore waived on appeal. Cavett v. State, 717 So.2d 722, 726 (Miss.1998).
¶ 8. Mayo also argues that the admission of a statement that he made to an investigating officer was reversible error. In the statement, Mayo summarized the crime, then said that he used the money to buy crack cocaine. In deciding to admit this statement, the trial court found that *737 the probative value of the statement was not greatly outweighed by its prejudicial effect. M.R.E. 403. The trial court ruled that this statement was admissible as proof of motive. We find no error.

2. Mis-identifying crime
¶ 9. Mayo argues that two detectives should not have been allowed to identify the crime to which they were responding. Both men reported that the radio dispatch that they heard indicated that a strong arm robbery had occurred. The defense objection was overruled. There was no explanation to jurors of the meaning of "strong arm robbery."
¶ 10. Mayo alleges that reversal is required because of a precedent in which an officer was allowed to give his opinion as to the crime that had occurred. Holliday v. State, 758 So.2d 1078, 1080-81 (Miss.Ct.App.2000). No one gave an opinion that what Mayo committed was a strong arm robbery. The officers were merely recounting what caused them to go to the Morgan residence.
¶ 11. This explanation of events did not prejudice the defense.

3. Leading questions
¶ 12. The State's direct examination of one of the victims included several leading questions. Mr. Morgan was eighty-two years old at the time of trial. The State is given latitude in the use of leading questions during direct examination of an elderly witness. Price v. State, 749 So.2d 166, 167 (Miss.Ct.App.1999). The defense objected to leading questions only one time, and it was overruled. We find the questions here to have been appropriate.

4. Jury Instructions
¶ 13. Mayo claims that two jury instructions were conflicting. Jury instruction C-8, also known as S-1, was the instruction on the elements of the crime of robbery. The record reveals that the trial judge asked whether or not there was any objection to this instruction. The reply by Mayo's attorney was "No, sir." Jury Instruction C-10 as originally proposed was collaboratively revised by the State and Mayo's attorney. The final result was a lesser-included offense instruction, D-3(a). The trial judge asked whether there was any objection to the instruction. Mayo's attorney had none.
¶ 14. The absence of trial-level objections means that these issues were not preserved for appellate review. Stevens v. State, 808 So.2d 908, 924 (Miss.2002).

5. Ineffective Assistance of Counsel
¶ 15. Mayo argues that he received ineffective assistance of counsel in the following areas: (1) inadequate jury instructions; (2) failure to prove that Mayo owned a car; (3) failure to object to leading questions; (4) agreeing with facts as presented by the State in opening statement; and (5) failure to file motion for speedy trial. We address the first four together.
¶ 16. In determining whether Mayo received ineffective assistance of counsel, he must demonstrate that his attorney's performance was defective and that this deficiency deprived him of a fair trial. Moore v. State, 676 So.2d 244, 246 (Miss.1996). The burden is on Mayo to demonstrate both. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). A high degree of deference is given to the performance of the attorney when there is a claim of ineffective assistance of counsel. Jackson v. State, 815 So.2d 1196, 1200 (Miss.2002). There is a rebuttable presumption that the performance of the attorney was competent and was well within the broad range *738 of reasonableness. Id. We find nothing in these allegations to suggest meaningful deficiencies by the attorney.
¶ 17. Mayo also claims that his attorney should have pursued the possibility of statutory and constitutional speedy trial violations. Statutory speedy trial claims are measured from the date of arraignment. Miss.Code Ann. § 99-17-1 (Rev.2000). If a defendant waives arraignment, that date is considered day one on the speedy trial calendar. Poole v. State, 826 So.2d 1222, 1228 (Miss.2002). Mayo waived arraignment on December 7, 2001, and was tried 263 days later on August 27, 2002. Mayo's statutory right to be tried within 270 days was not violated.
¶ 18. As to the Sixth Amendment speedy trial right, four factors are to be considered in measuring for possible violations. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We examine each.
¶ 19. Length of Delay. Here, the pertinent time began to run from the date Mayo was arrested on August 6, 2001. Moore v. State, 837 So.2d 794, 798 (Miss.Ct.App.2003). From this date until trial, 386 days passed. The Supreme Court has held that a delay of at least eight months is "presumptively prejudicial." Smith v. State, 550 So.2d 406, 408 (Miss.1989).
¶ 20. Reason for Delay. The record does not indicate the reason for delay of about three months between arrest and indictment. Less than one month elapsed between the time of indictment on November 16, 2001, until the plea on December 7, 2001. Initially, trial was set for February 26, 2002. A total of 182 days was granted in continuances. These continuances were granted for good cause including illness of judge, plea negotiations, and the deployment of a witness in active military duty. Two continuances were granted because of a crowded trial docket which required the judge to attend to other trials. Polk v. State, 612 So.2d 381, 387 (Miss.1992). We find no error here.
¶ 21. Assertion of Right. Mayo never asserted a right to a speedy trial by properly filing a motion. Instead, we find an instance on February 26, 2002, where Mayo signed an order resetting the case which included a statement that he waived his right to a speedy trial.
¶ 22. Prejudice. There are no assertions by Mayo of prejudice. Because there is no indication of deliberate delay and no discernable prejudice, the balance is in favor of rejecting the speedy trial claim. Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994). We do.

Issue 6: Guilty Verdict
¶ 23. Mayo claims that the weight and sufficiency of the evidence do not support a guilty verdict. It was reasonable for the jury, upon the evidence at trial, to conclude that Mayo robbed Mr. Morgan. There was evidence on every element of the crime, and the weight of that incriminating evidence was not counterbalanced by overwhelming evidence to the contrary.
¶ 24. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF ROBBERY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY FINE OF $2,500 AND RESTITUTION OF $65 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
KING, C.J., BRIDGES, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.