# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01028-COA

**JAMES HILLIARD**                                                            **APPELLANT**

v.

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

DATE OF JUDGMENT:            06/19/2014
TRIAL JUDGE:                 HON. ANDREW K. HOWORTH
COURT FROM WHICH APPEALED:   LAFAYETTE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      JONATHAN W. MARTIN
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:          CIVIL - POSTCONVICTION RELIEF
TRIAL COURT DISPOSITION:     DISMISSED APPELLANT'S MOTION FOR
                             POSTCONVICTION RELIEF
DISPOSITION:                 AFFIRMED - 09/29/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     James Hilliard appeals the Lafayette County Circuit Court's dismissal of his motion for postconviction relief (PCR). On appeal, Hilliard raises the following issues: (1) whether the circuit court erred by dismissing his ineffective-assistance-of-counsel claim without an evidentiary hearing; and (2) whether his sentencing as a habitual offender is illegal. Finding no error, we affirm.

## FACTS

¶2.     On December 1, 2009, law enforcement officers stopped a vehicle containing Hilliard

and two other passengers. After obtaining a search warrant, authorities searched the vehicle and discovered cocaine. Law enforcement officers subsequently arrested Hilliard and his two companions. On February 18, 2011, a grand jury indicted Hilliard for Count I, conspiracy to sell a Schedule II controlled substance (cocaine), and Count II, possession of a Schedule II controlled substance (cocaine), in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2009) and Mississippi Code Annotated section 97-1-1 (Supp. 2010). On March 28, 2012, Hilliard filed an unsuccessful motion to suppress the evidence seized upon his arrest. Hilliard filed a second motion asking that the circuit court reconsider its denial of his suppression motion. However, the circuit court denied this motion as well.

¶3. On July 12, 2012, the State moved to amend Hilliard's indictment to reflect his status as a habitual offender. *See* Miss. Code Ann. § 99-19-81 (Rev. 2007). To support its motion, the State provided information to show that Hilliard had previously been convicted in California for felony possession of a controlled substance—once on May 7, 1998, in cause number 198568, and again on September 1, 2000, in cause number CC062987. As reflected in the record, the motion to amend Hilliard's indictment to reflect his habitual-offender status stated with specificity the cause numbers of Hilliard's prior convictions, as well as the dates on which he was convicted, the jurisdictions in which he was convicted, and the crimes of which he was convicted.

¶4. On July 16, 2012, Hilliard pled guilty pursuant to a negotiated plea agreement. Hilliard acknowledged in his guilty-plea petition that he had previously been convicted of "[two] felonies in the State of California." The plea petition reflected that Hilliard signed

2

the petition in the presence of his attorney, who also signed the petition and provided his Mississippi bar number. As stated in Hilliard's guilty-plea petition, he agreed to plead guilty to the conspiracy charge of his indictment if the State recommended that the circuit court dismiss the possession charge, fine Hilliard $3,000, and sentence Hilliard, as a habitual offender, to seventeen years in the custody of the Mississippi Department of Corrections (MDOC), with thirteen years to serve and two years of postrelease supervision.

¶5.     The circuit court also held Hilliard's plea hearing on July 16, 2012. At the start of the plea hearing, the State presented evidence to support its motion to amend Hilliard's indictment to reflect his status as a habitual offender.[1] The State's evidence included the cause numbers, dates of conviction, jurisdictions of conviction, and sentences related to each of Hilliard's two prior felony convictions for possession of a controlled substance. On Hilliard's behalf, his attorney informed the circuit court that, pursuant to the plea agreement negotiated with the State, Hilliard raised no contest to the State's motion to amend his indictment. The circuit court also acknowledged during the plea colloquy that the State's motion was unopposed and that the parties had stipulated that Hilliard's two prior felonies qualified him for habitual-offender status. The circuit court then granted the State's motion to amend Hilliard's indictment to reflect his status as a habitual offender.

¶6.     After Hilliard indicated his intention to plead guilty to Count I of his indictment, the circuit court discussed the consequences of Hilliard's guilty plea. The circuit court explained that Hilliard's guilty plea would waive certain rights and would qualify Hilliard for

---

[1] At the same time, the State withdrew another motion it had filed that sought to amend Hilliard's indictment to reflect his status as a subsequent offender.

3

sentencing as a habitual offender, which would result in an enhanced sentence. The circuit court also advised Hilliard of the minimum and maximum sentences related to his charge. As the record reflects, Hilliard acknowledged under oath that he understood the consequences of his guilty plea. Hilliard also informed the circuit court that he was, in fact, guilty of the crime of conspiracy to sell cocaine, a controlled substance. Hilliard further admitted that it was his signature that appeared on the guilty-plea petition and that he had given his guilty plea freely, voluntarily, and knowingly.

¶7. The circuit court stated on the record during Hilliard's plea colloquy that Hilliard was represented by a capable and experienced court-appointed attorney rather than a public defender. In response to the circuit court's questioning, Hilliard acknowledged under oath that he was satisfied with the legal representation provided by his attorney. Hilliard further stated that he had consulted with his attorney regarding the contents of his plea petition and the consequences of his guilty plea, including the circumstances giving rise to the charge against him and the rights he waived by pleading guilty. After thoroughly questioning Hilliard, the circuit court accepted Hilliard's guilty plea.

¶8. Following Hilliard's plea, the circuit court accepted the State's sentencing recommendation. The circuit court dismissed Count II of Hilliard's indictment; fined Hilliard $3,000; and sentenced Hilliard, as a habitual offender, to seventeen years in MDOC's custody, with thirteen years to serve and two years of postrelease supervision. The circuit court also granted Hilliard's request to self-report in sixty days to begin serving his sentence. After ordering Hilliard to report to the Lafayette County Detention Center no later

than noon on September 17, 2012, the circuit court warned Hilliard that it retained the right to review his sentence and that a failure to timely report could lead to an increase in his sentence.

¶9. Despite the circuit court's warnings, Hilliard failed to timely report to the detention center. As a result, the circuit court issued a bench warrant for Hilliard's arrest. After exercising its authority and conducting a hearing to review the matter, the circuit court found that Hilliard failed to provide sufficient reason for his untimely reporting. As a result, the circuit court amended Hilliard's sentence. In its amended sentencing order, the circuit court ordered Hilliard to serve fifteen years, rather than thirteen years, of his seventeen-year sentence. Thus, of the four years originally suspended from Hilliard's sentence, the circuit court revoked the suspension of two of the four years.

¶10. Following the circuit court's ruling, Hilliard filed his PCR motion. Finding that "it plainly appear[ed] from the face of the motion, exhibits, and prior proceedings that [Hilliard] [was] not entitled to any relief[,]" the circuit court dismissed Hilliard's PCR motion. Aggrieved, Hilliard appeals to this Court.

## STANDARD OF REVIEW

¶11. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are 'clearly erroneous'; however, we review the circuit court's legal conclusions under a de novo standard of review." *Boyd v. State*, 65 So. 3d 358, 360 (¶10) (Miss. Ct. App. 2011).

## DISCUSSION

5

**I.** **Whether the circuit court erred by dismissing Hilliard's ineffective-assistance-of-counsel claim without an evidentiary hearing.**

¶12. Hilliard alleges that he received ineffective assistance of counsel because his attorney failed "to advise him of a potentially meritorious speedy[-]trial defense to the charge for which he was indicted."[2] According to Hilliard, he would not have pled guilty to the conspiracy charge or waived his right to a speedy trial if his attorney had properly advised him. Hilliard argues that the record reflects no dispute as to any of the facts alleged in his PCR motion, and he contends that the circuit court therefore erred by dismissing his ineffective-assistance-of-counsel claim without an evidentiary hearing.

¶13. To prevail on his ineffective-assistance-of-counsel claim, Hilliard bears the burden of demonstrating the following: (1) his attorney's performance was deficient; and (2) he suffered prejudice as a result of his attorney's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] strong presumption [exists] that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Therefore, Hilliard must show that his attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688. Furthermore, to succeed on his claim, Hilliard "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "In the context of guilty pleas, this means the defendant must show that, were it not for counsel's errors, he would not

---

[2] *See* Miss. Code Ann. § 99-17-1 (Rev. 2007) ("Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.").

have pleaded guilty and would have insisted on going to trial." *Burrough v. State*, 9 So. 3d 368, 375 (¶22) (Miss. 2009).

¶14.   "[W]here a defendant voluntarily pleads guilty to an offense, he waives all non-jurisdictional rights incident to trial, including the constitutional right to a speedy trial." *Hill v. State*, 60 So. 3d 824, 827 (¶6) (Miss. Ct. App. 2011) (citing *Anderson v. State*, 577 So. 2d 390, 391-92 (Miss. 1991)).   However, this Court has previously recognized that "an ineffective[-]assistance[-]of[-]counsel claim is cognizable on [PCR] from a voluntary guilty plea."   *Robinson v. State*, 920 So. 2d 1009, 1012 (¶11) (Miss. Ct. App. 2003) (citations omitted).   "[O]ur courts have found ineffective-assistance claims based on the failure to raise speedy-trial issues waived where the plea was voluntary and intelligent, but they have found such claims not waived to the extent the plea was rendered involuntary by ineffective assistance."   *Hill*, 60 So. 3d at 827 (¶7).   Furthermore, this Court has stated that "a defense attorney's failure to counsel his client regarding the availability of [a] potential speedy[-]trial bar to prosecution . . . constitute[s] ineffective assistance."   *McVeay v. State*, 754 So. 2d 486, 489 (¶11) (Miss. Ct. App. 1999).   "If counsel's failure to move for a speedy[-]trial discharge is the result of actual incompetence on the attorney's part and results in prejudice to the defense, [the] defendant is entitled to a new trial."   *Id.* (citation omitted).

¶15.   To address the merits of Hilliard's claim, we apply the balancing test established in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and consider the following factors:   (1) the length of the delay; (2) the reason for the delay; (3) whether Hilliard asserted his right to a speedy trial; and (4) whether Hilliard suffered prejudice from the delay.   Our analysis must

consider the totality of the circumstances. *Robinson*, 920 So. 2d at 1013 (¶13). "Any delay of over eight months is presumptively prejudicial and triggers balancing of the other three factors." *Id.*

¶16. The record in the present case fails to reflect that Hilliard possessed a meritorious speedy-trial claim. Furthermore, Hilliard's plea colloquy shows that Hilliard was fully advised by his attorney and was satisfied with his attorney's legal services. As the record reflects, the State indicted Hilliard on February 18, 2011. On October 10, 2011, Hilliard waived arraignment and entered a plea. Therefore, this date is considered day one on the speedy-trial calendar. *See Mayo v. State*, 886 So. 2d 734, 738 (¶17) (Miss. Ct. App. 2004).[3] The record further shows that the circuit court gave Hilliard a delay of thirty to forty-five days to complete discovery. Hilliard then filed a motion to suppress evidence on March 23, 2012, and the circuit court held a hearing on the motion on April 2, 2012. Two days later, on April 4, 2012, the circuit court entered an order denying Hilliard's motion to suppress evidence. On April 11, 2012, Hilliard filed an unsuccessful motion for reconsideration of the denial of his suppression motion. On July 12, 2012, the State filed a motion to amend Hilliard's indictment to reflect Hilliard's status as a habitual offender. Then, on July 16, 2012, Hilliard submitted his petition to plead guilty.

¶17. During his plea colloquy, Hilliard stated under oath that he had been advised by his attorney of the contents of his plea petition and the rights he waived by pleading guilty to the

_____

[3] The record shows that Hilliard was out on bond after indictment and that the circuit court had to appoint him a new attorney due to a conflict of interest regarding his initial attorney.

charge against him. Hilliard also provided while under oath that he consulted with his attorney prior to his plea and that he was satisfied with the legal representation provided by his attorney. In dismissing Hilliard's PCR motion, the circuit court found that "it plainly appear[ed] from the face of the motion, exhibits, and prior proceedings that [Hilliard] [was] not entitled to any relief."

¶18. Mississippi statutory law requires all offenses for which an indictment is presented to be tried within 270 days after arraignment unless good cause is shown and the circuit court enters a continuance. *See* Miss. Code Ann. § 99-17-1 (Rev. 2007). While any delay greater than eight months is presumptively prejudicial, Hilliard's case fails to reach the benchmark of presumptive prejudice. Hilliard waived arraignment on October 10, 2011, and he entered his guilty plea pursuant to his negotiated plea agreement on July 16, 2012. Thus, as the record reflects, Hilliard entered his guilty plea 280 days after he waived arraignment. However, thirty to forty-five of those days were attributable to Hilliard since the circuit court granted Hilliard a defense delay on October 10, 2011, to complete discovery. As stated, this time of thirty to forty-five days is attributable to Hilliard rather than the State and should be deducted from the time considered for speedy trial.

¶19. Based on the record before us, we find that Hilliard fails to meet his burden to show that his attorney provided ineffective assistance by failing to advise him of a potentially meritorious speedy-trial claim. *See Bailey v. State*, 65 So. 3d 349, 350-51 (¶¶5-6) (Miss. Ct. App. 2011) (holding that the defendant's bare unsupported allegations were insufficient to show a violation of his fundamental constitutional rights). Accordingly, we find no merit to

9

Hilliard's assertion that the circuit court erred by dismissing his claim without an evidentiary hearing.

**II.      Whether Hilliard's sentencing as a habitual offender is illegal.**

¶20.    In his next assignment of error, Hilliard admits that he pled guilty to Count I of his indictment for conspiracy to sell cocaine, a Schedule II controlled substance. However, Hilliard argues that he never pled guilty to the habitual-offender portion of the indictment, and he contends that the circuit court never found that such a guilty plea was freely and voluntarily given and accepted. Hilliard further asserts that the circuit court failed to hold a bifurcated hearing for the State to prove beyond a reasonable doubt that he was a habitual offender. Based on these arguments, Hilliard alleges that his sentencing as a habitual offender is illegal.

¶21.    "For this Court to affirm an enhanced sentence under [section] 99-19-81, the trial court's basis for imposing the sentence must appear in the record on appeal." *Short v. State*, 929 So. 2d 420, 426 (¶17) (Miss. Ct. App. 2006) (citing *Vince v. State*, 844 So. 2d 510, 517 (¶22) (Miss. Ct. App. 2003)). As this Court has previously stated:

> Generally, to sentence a defendant as a habitual offender, the State must prove the prior offenses by competent evidence, and the defendant must be given a reasonable opportunity to challenge the prosecution's proof. However, where the defendant enters a plea of guilty and admits those facts which establish his habitual status, the State has met its burden of proof.

*Wilkins v. State*, 57 So. 3d 19, 26 (¶23) (Miss. Ct. App. 2010) (internal citations omitted).

¶22.    Under Rule 11.03(3) of the Uniform Rules of Circuit and County Court, "[i]f the defendant . . . enters a plea of guilty on the principal charge, a hearing before the court

without a jury will then be conducted on the previous convictions." However, "a petitioner's status as a habitual offender can be established at the entry of a guilty plea, making it unnecessary to have a separate bifurcated hearing." *Loden v. State*, 58 So. 3d 27, 29 (¶8) (Miss. Ct. App. 2011) (citing *Keyes v. State*, 549 So. 2d 949, 951 (Miss. 1989)). "The purpose of Rule 11.03(3) is to give the defendant an opportunity to challenge the fact of his prior convictions in a setting separate from the guilt-determination phase. Where a defendant freely admits those prior convictions, the purpose of Rule 11.03 has been met." *Small v. State*, 141 So. 3d 61, 67 (¶17) (Miss. Ct. App. 2014).

¶23. Mississippi caselaw and the record in the present case fail to support Hilliard's claims that the circuit court erred by sentencing him as a habitual offender pursuant to section 99-19-81. On July 12, 2012, the State filed its motion to amend Hilliard's indictment to reflect his status as a habitual offender. Four days later, on July 16, 2012, Hilliard filed his petition to enter a plea of guilty pursuant to a negotiated plea agreement. In his guilty-plea petition, Hilliard acknowledged his two prior felony convictions in California. In addition, Hilliard admitted under oath during his plea colloquy that he qualified for sentencing as a habitual offender in the present case.

¶24. As reflected in the transcript of the plea colloquy, the circuit court advised Hilliard of the consequences of his guilty plea. The circuit court discussed that Hilliard's guilty plea would not only result in the waiver of certain rights but would also subject him to enhanced sentencing as a habitual offender. In both his guilty-plea petition and his plea colloquy, Hilliard acknowledged that he understood the effects of his guilty plea and that his attorney

11

had provided satisfactory legal representation. As a result of Hilliard's responses during the plea colloquy, the circuit court found Hilliard's guilty plea was entered freely, voluntarily, and knowingly.

¶25. As previously discussed, at the start of Hilliard's plea hearing, the State presented evidence to support its motion to amend Hilliard's indictment to reflect his status as a habitual offender. Specifically, the State provided the circuit court information pertaining to Hilliard's two prior felony convictions in California. After the State's offer of proof, Hilliard's attorney informed the circuit court that, pursuant to the plea agreement negotiated with the State, Hilliard did not contest his habitual-offender status. Based on the evidence presented, the circuit court then found that Hilliard qualified for sentencing as a habitual offender. At the end of Hilliard's plea colloquy, before accepting Hilliard's guilty plea, the circuit court again advised Hilliard that his two prior felonies in California qualified him for sentencing as a habitual offender. In response, Hilliard acknowledged his understanding of this fact and the consequences of his habitual-offender status.

¶26. After reviewing the record and relevant caselaw, we find that the record reflects the State met its burden of proof and established Hilliard's status as a habitual offender. As the record demonstrates, Hilliard himself admitted under oath that his two prior felony convictions qualified him for sentencing as a habitual offender once the circuit court accepted his plea of guilty. After losing his motion to suppress the evidence seized upon his arrest, Hilliard negotiated a plea agreement with the State. In exchange for his stipulation that he qualified for sentencing as a habitual offender, the State agreed to recommend that

12

the circuit court dismiss the second charge of Hilliard's indictment.

¶27. Based on a review of the record and caselaw, we find no error in the circuit court's determination that Hilliard qualified for sentencing as a habitual offender under section 99-19-81. Hilliard acknowledged his two prior felony convictions in California and stipulated that these prior convictions qualified him for sentencing as a habitual offender. Furthermore, the hearing transcript of Hilliard's plea colloquy reflects that he freely, voluntarily, and knowingly entered his guilty plea. Additionally, we note that Hilliard's sentence fell within the limits provided by statutory law. *See* Miss. Code Ann. § 41-29-139. "In Mississippi, the law is well-settled that sentences which are within the statutory limits will generally be upheld. Sentencing is within the trial court's discretion and is not subject to appellate review if the sentence is within statutory limits." *Wilkins*, 57 So. 3d at 24 (¶13) (internal citations omitted). As a result, we find that this assignment of error lacks evidentiary support and is without merit.

¶28. **THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**