# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-01454-SCT

*JOSHUA HURST a/k/a JOSHUWA HURST*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2014 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/09/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND BEAM, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Joshua Hurst was convicted by a jury of his peers on two counts of murder, two counts of aggravated assault, and one count of being a felon in possession of a firearm.  He appeals to this Court arguing that his constitutional and statutory rights to a speedy trial were violated, and also that the trial court erred by declining to order a mistrial for a discovery violation.  Because his arguments are without merit, this Court affirms his convictions.

## FACTS AND PROCEDURAL HISTORY

¶2.   On March 7, 2013, several people were shot, and two were killed, at a home in Jackson during a dice game.  Joshua Hurst was arrested for the crimes on March 9, 2013.  On July 12, 2013, Hurst was indicted for the murder of Ronnie Williams, the murder of Kendra Hill, the aggravated assault of LaQuintin Carter, and the aggravated assault of Jason Kimble, as well as for being a felon in possession of a firearm.  Hurst was arraigned on September 24, 2013, and at the time of his arraignment, his trial was set for April 7, 2014.

¶3.   On October 23, 2013, Hurst filed a Motion for Discovery and Request for Plea Offer that included a demand for speedy trial that stated "without surrendering his rights or privileges to be offered a plea in this matter, and files this her [sic] demand for a speedy trial."  No specific objection was made to the previously set trial date of April 7, 2014.  On October 25, 2013, Hurst filed another Motion for Discovery and Request for Plea Offer substantially similar to the first motion.  In that motion, Hurst demanded speedy trial "without surrendering his rights or privileges to be offered a plea in this matter, and files this his demand for a speedy trial."  Again, this second motion made no mention of or objection to the trial date of April 7, 2014.  The motion also moved for the State to arraign Hurst, even though he had been arraigned one month prior.  On April 10, 2014, a Continuance Order was entered, continuing Hurst's trial from April 7, 2014, until June 9, 2014.  The reason given for the continuance was that "the case of *State of Mississippi v. Lee Brown* proceeded to trial, thus a crowded docket prevented the case from being tried."  The docket sheet does not contain an entry for any motion for a continuance, so it appears that the trial court may have

2

entered the continuance order on its own motion. On June 11, 2014, the trial court entered another continuance order, stating that "a crowded docket prevented the case from being tried" on June 9, 2014, and it continued the case until August 11, 2014. The docket sheet likewise does not contain an entry for any motion for a continuance, so it appears that the trial court may have entered the continuance order on its own motion.

¶4.     On August 4, 2014, Hurst filed a Motion to Dismiss for the State's Violation of the Defendant's Sixth Amendment Right to Speedy Trial and the State's Violation of the 270 Day Rule. In it, he maintained that "the record reflects that overcrowded dockets are the primary reason for the delay." He also indicated that the August 4, 2014, motion was the first assertion of his right to a speedy trial. Hurst claimed that the prejudice incurred by the delay consisted of his pretrial detention, his inability to commune with his family, and missing the birth of his child. He further claimed that "witnesses who may have been able to aid in your defendant's case can now no longer be located." On August 6, 2014, the defense argued this motion. At the hearing, the court asked whether Hurst was entitled to bond out on these charges, as he was already out on bond in two cases when he was arrested on the current charges. The defense attorney stated that it was his "understanding that he was not granted bond when he was arrested on these charges most likely because of those other charges that were pending." The State maintained that Hurst was not bond eligible because he was under indictment for two other crimes when he was arrested on these charges.

¶5.     The defense also argued that a "witness who would have been able to testify for us that was in contact with the defendant after he was arrested has since disappeared. And for

3

over a year now through the efforts of the defendant and defense counsel, we cannot find him." The defense further argued that "had the trial gone forward like it was supposed to originally, he would still be available to us." The State also maintained that this was the first notice it had of Hurst's assertion of his right to a speedy trial, and the defense failed to counter the State's assertions by raising the issue of the assertion in the prior discovery motions. The trial court questioned the defense further as to the witness, asking "[w]ho was this witness and what was he supposed to testify to?" The defense responded that "the defendant knew him by the nickname Jubel (phonetic). He says his name was Julius." The defense stated that Julius's cell phone no longer works. It affirmed that Julius went missing about a year ago. As to what Julius would testify to, the defense claims that "He was gonna testify that he was there as well that day." The defense attorney also stated that "I can't – without breaking confidentiality I would just say Your Honor that he would provide support and testimony to – if the defendant should take the stand – what he would testify actually happened that day." The dialogue at the hearing indicates that defense counsel never spoke with or interviewed Julius, but was simply repeating what Hurst believed Julius's testimony would have been.

¶6.     The trial court ultimately stated that it would take the motion under advisement. On August 11, 2014, the trial court orally denied the motion for speedy trial without making findings, and stated that it would "get a written order and an opinion out very soon." The record does not contain any such written order or opinion; thus, the record does not contain any findings by the trial court on the issue of speedy trial.

4

¶7. Trial began on August 12, 2014. The State offered testimony from the responding police officers, detectives, and investigators to describe the scene of the crime and the evidence collected, namely shell casings, projectiles, and firearms. It also introduced evidence from Mississippi Crime Laboratory employees regarding gunshot residue on Williams's body and ballistics testing results. The pathologists who performed the autopsies on Williams and Hill testified as to the manner and causes of their deaths, specifically that both died of gunshot wounds and the manner of both deaths was homicide. Several eyewitnesses testified, including LaMarcus Murray, a resident of the home that was the scene of the crime and Hill's husband, and all identified Hurst as the sole shooter.

¶8. During Murray's testimony, the following occurred:

Q. Okay. All right. Now you provided more than one statement in this case; is that right?
A. Yes, ma'am.
Q. The first statement that you provided tell us about that?
. . .
A. Okay. The statement I provided that he came over there for to pay my cousin [Williams].
. . .
Q. Was that true?
A. No, ma'am.
Q. So you're telling us that you told the police that the defendant had come to pay your cousin?
A. Yes, ma'am.
Q. On March 7, 2013?
A. Yes, ma'am.
Q. And it's your testimony today that, that wasn't true?
A. No, ma'am.
Q. Why did you tell the police that?
A. Because I was scared. And I really had got a phone call from him telling me I haven't seen nothing, or I haven't saw nothing. And I didn't know if he was around or what.

5

The defense immediately moved for a mistrial, stating that the alleged statement by the defendant was not disclosed in discovery. What had been disclosed in discovery was that Murray told a different story on March 8, 2013, than he did on March 7, 2013, because he was attempting to protect Williams's reputation.[1] The trial court asked if the defense had contact information for Murray, to which it responded in the affirmative. It also queried the defense as to whether it spoke with Murray or made any effort to contact him, to which the defense responded in the negative. The prosecutors asserted that they did not anticipate this answer or attempt to elicit this response. They stated that they believed, and discovery revealed, that a phone call was made to Kyles, not Murray. The State further stated:

> As far as his differing accounts that he's been giving. We actually had not heard a version, anything near that up until potentially yesterday. And we instructed him not to say anything about that because we had no way of verifying in fact that, that was true because that was not what we understood. And we had no idea that this was the actual version that he was actually going to tell at this time. We weren't aware of the type of statement of that nature.

The State also withdrew any effort to delve further into the matter. The trial court determined that Uniform Rule of Circuit and County Court Practice 3.12 governing mistrials for misconduct did not apply, and thus applied Rule 9.04. Rule 9.04 gave the trial court several options to rectify a discovery violation, and, as the court believed this was an inadvertent discovery violation, it granted the defense a reasonable opportunity to interview the witness. The defense requested and was granted twelve minutes to do so. After the

---

[1] The defense recalled Detective Magee, one of the State's witnesses who responded to the scene of the crime and investigated the case, to testify that on March 8, 2013, Murray "stated that he didn't tell detectives everything on this day this event took place because too many people were listening. He advised that he didn't want to – he did not want people to think different of Ronnie Jermaine Williams."

6

interview, the State asked the court to admonish Murray not to go into that line of testimony. The defense requested that the court *not* instruct the jury to disregard Murray's statement so as not to call further attention to the testimony.

¶9.    On August 13, 2014, the jury found Hurst guilty on all counts.  Hurst filed a motion for new trial, which the trial court denied.  Hurst appealed to this Court.  In his appeal, Hurst argues that he was denied his right to a speedy trial and that the trial court erred in denying his motion for a mistrial after Murray's statement about a phone call when that statement had not been disclosed in discovery.

## ANALYSIS

### A. Speedy Trial

¶10.    The State concedes that this Court should review Hurst's speedy trial claim de novo, because the record is devoid of the trial court's analysis of the *Barker* factors.  *DeLoach v. State*, 722 So. 2d 512, 516-17 (Miss. 1998).

### 1. Constitutional Right

¶11.    The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to a speedy trial.  *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).   In determining whether a defendant's right to a speedy trial has been violated, courts must analyze four factors: 1) the length of delay, 2) the reason for the delay, 3) the defendant's assertion of his right to speedy trial, and 4) prejudice to the defendant.  *Id.* at 530.

**a. Length of Delay**

7

¶12. Hurst's right to a speedy trial attached on the date of his arrest, March 9, 2013. *Franklin v. State*, 136 So. 3d 1021, 1033 (Miss. 2014). In Mississippi, a delay of eight months or more is presumptively prejudicial and requires a full *Barker* analysis. *Id.* Accordingly, the burden of persuasion shifts to the State to show good reason for the delay. *Id.* The delay between Hurst's arrest on March 9, 2013, and his trial beginning on August 12, 2014, was more than seventeen months, and was thus presumptively prejudicial. This factor weighs in favor of Hurst.

**b. Reason for Delay**

¶13. "Different reasons for delay are assigned different weights." *Bateman v. State*, 125 So. 3d 616, 629 (Miss. 2013). Deliberate delay to inhibit the defense is weighed heavily against the State. *Id.* "More neutral reasons, such as an overcrowded docket, should be weighed less heavily but nonetheless must be considered, since the responsibility for such circumstances rests with the government." *Id.* "[T]he delay caused by an overcrowded docket should be weighed only slightly against the State." *Franklin*, 136 So. 3d at 1034. In this case, the two orders for continuance state that the cause is an overcrowded docket. The record does not contain any motions for continuance by the State, so it is unknown whether the prosecutor determined which cases to take to trial and why those cases were chosen over this one, or whether a judge so determined. Such information would be helpful to the de novo review of this case. Nonetheless, this factor weighs only slightly in Hurst's favor, because it is clear from the record that the reason for the delay was a crowded docket.

**c. Assertion of the Right to a Speedy Trial**

¶14.     "'Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert that right.'" **Bateman**, 125 So. 3d at 630 (quoting **Taylor v. State**, 672 So. 2d 1246, 1261 (Miss. 1996)). "This Court has held that this factor weighs against a defendant who waits a significant amount of time after arrest to demand a speedy trial." **Bateman**, 125 So. 3d at 630. Hurst was arrested on March 9, 2013, indicted on July 12, 2013, and arraigned on September 24, 2013. The arraignment set a trial date of April 7, 2014, and the record contains no indication that Hurst objected to this trial date set approximately thirteen months after his arrest, or that he demanded an earlier trial date. Hurst did not demand a speedy trial until October 23 and 25, 2013, 228 days after his arrest and after his trial date had been set. *See* **Perry v. State**, 637 So. 2d 871, 875-76 (Miss. 1994) (factor weighed against defendant where "his June motion mentioned that the trial date was set for October, [but] an earlier trial date was not a part of the relief requested, even in the alternative.").

¶15.     Furthermore, after the trial was twice postponed, Hurst made no demand for speedy trial, nor did he object to either of the two rescheduled trial dates, both set after his demand for speedy trial was made. His trial date was ultimately set for August 2014, and only in the week before did Hurst file a motion to dismiss for lack of speedy trial. Moreover, the motion for dismissal and the attendant hearing affirmatively indicate that this particular motion was Hurst's first demand for a speedy trial. And, while that was what was indicated, the motion to dismiss was *not* actually a demand for speedy trial, but a request for a dismissal based on the alleged lack of a speedy trial. The motion to dismiss does not amount to a demand for

speedy trial, because Hurst sought discharge, not trial. *Perry*, 637 So. 2d at 875 ("[A] demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial. Such a motion seeks discharge, not trial."). It is indeed the State's duty to bring Hurst to trial, but he made no protestation regarding the dates set, or at least none that is contained in the record. Furthermore, Hurst gives no indication that he somehow was unable to properly assert his speedy trial rights in a timely manner or to object to the trial date set in his arraignment. *See Bateman*, 125 So. 3d at 631. This factor weighs against Hurst.

**d. Prejudice**

¶16.    Prejudice "encompasses two aspects: actual prejudice in defending the case and interference with the defendant's liberty." *Id.* To determine whether the defendant was prejudiced by the delay, this Court considers: "(1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id.* (internal quotations omitted).

¶17.    On appeal, Hurst does not argue that his pretrial incarceration was oppressive or that he had any anxiety or concern that needed to be minimized.[2] He does argue that his defense was hampered, arguing that Hurst "explained to the trial court that because of the delay in his trial, he was unable to locate a witness he wished to call in his defense." Yet, at the trial court hearing on August 4, 2014, Hurst argued that this witness, known only as Julius, had

---

[2]Nevertheless, the State points out that Hurst was not eligible for bond because he faced a number of other charges not related to those in this case; thus, this case was not the sole cause of his detention.

been missing for more than a year. So, at best, Hurst could last contact Julius in July 2013, only four months after his March 2013 arrest, and the same month that he was indicted. The record does not contain exactly when Julius disappeared, other than it was more than a year prior; thus, he could have been missing before July 2013. It does not appear that the delay in trial harmed Hurst, as this witness would have been missing even if Hurst had received a very speedy trial. Moreover, Hurst gave no indication as to what this witness's testimony would have been, other than that he was present at the dice game at the time the shooting occurred. It is impossible from the record to ascertain if Julius's testimony would have even been helpful to Hurst. It also appears from the record that Hurst's attorneys never spoke to Julius; rather, they received the information about the content of Julius's proposed testimony from Hurst, rather than from Julius himself. Such a claim of prejudice is too tenuous to earn credence. This factor weighs in favor of the State.

¶18. A balancing of the **Barker** factors indicates that Hurst's constitutional right to a speedy trial was not violated. In this case, the State did show good cause for delay and that the delay was not deliberate, and Hurst raised nothing that would counter that. He did not effectively demand a speedy trial or show that he was unable to do so, nor did he demonstrate any credible prejudice resulting from the delay in his trial. Thus, a de novo review of the **Barker** factors on the somewhat sparse record before us reveals that Hurst's right to a speedy trial was not violated, and the trial court did not err by denying Hurst's motion to dismiss for lack of speedy trial.

**2. Statutory Right**

11

¶19.    Hurst also claims that his statutory right to speedy trial was violated.   Mississippi

Code Section 99-17-1 provides:

> Unless good cause be shown, and a continuance duly granted by the court, all
> offenses for which indictments are presented to the court shall be tried no later
> than two hundred seventy (270) days after the accused has been arraigned.

Miss. Code Ann. § 99-17-1 (Rev. 2015).  The time period between Hurst's arraignment and

trial consisted of 321 days.  Discharge under the statute is not required unless the statute is

clearly violated *and* the accused has sustained prejudice by virtue of the violation.  ***Guice v.***

***State***, 952 So. 2d 129, 140 (Miss. 2007).  As previously shown, Hurst suffered no prejudice

by any delay.  Moreover, this Court has previously held that evidence of a congested trial

docket might support a "good cause" finding.  ***Id.***  The trial court did not make an actual

"good cause" finding, but it did enter a continuance order noting a crowded docket.  Thus,

Hurst's statutory right to speedy trial was not violated.

### B. Motion for Mistrial

¶20.    This Court reviews a trial court's denial of a motion for mistrial for abuse of

discretion.  ***Gunn v. State***, 56 So. 3d 568, 571 (Miss. 2011).

¶21.    Hurst claims that the trial court erred by denying his motion for mistrial after Murray

testified regarding a phone call he allegedly received from Hurst.  Hurst's motion for mistrial

was based on the premise that the testimony was a discovery violation, as no statement or

phone call from Hurst to Murray was revealed in discovery.

¶22.    Uniform Rule of Circuit and County Court Practice 9.04 provides that the prosecution

must inform the defense of "the substance of any oral statement made by the defendant."

URCCC 9.04(A)(1).  It also provides that both parties have a duty to timely supplement

discovery.  URCCC 9.04(E).  The rule provides that if the prosecution attempts to introduce

evidence that has not been disclosed according to the rule and the defense objects, the court

shall:

> 1. Grant the defense a reasonable opportunity to interview the newly
> discovered witness, to examine the newly produced documents, photographs
> or other evidence; and
> 2. If, after such opportunity, the defense claims unfair surprise or undue
> prejudice and seeks a continuance or mistrial, the court shall, in the interest of
> justice and absent unusual circumstances, exclude the evidence or grant a
> continuance for a period of time reasonably necessary for the defense to meet
> the non-disclosed evidence or grant a mistrial.
> 3. The court shall not be required to grant either a continuance or a mistrial for
> such a discovery violation if the prosecution withdraws its efforts to introduce
> such evidence.

URCCC 9.04(I).

¶23.    "The admission or exclusion of evidence constitutes reversible error only where a

party can show prejudice or harm."  ***Ross v. State***, 954 So. 2d 968, 1000-01 (Miss. 2007).

Thus, even in a total failure to adhere to Rule 9.04 by the trial court, that failure must still

prejudice the party to constitute reversible error.  ***Id.***   Hurst does not allege that the trial

court failed to follow Rule 9.04, but rather, he argues that it incorrectly exercised its

discretion, because the statement was so prejudicial that it must have inflamed the jury.  Yet,

he did not argue at the trial court level that the testimony was per se inadmissible in and of

itself.

¶24.    Hurst cites ***Snelson v. State*** for the proposition that Murray's statement was so

prejudicial that its admission requires reversal, comparing it to testimony that Snelson had

committed multiple murders prior to the murder for which he was on trial. ***Snelson v. State***, 704 So. 2d 452 (Miss. 1997). ***Snelson*** is distinguishable from this case. In ***Snelson***, the witness unexpectedly testified that the defendant had told him that the victim was his third or fourth murder victim. ***Id.*** at 455. The defense objected, stating that the statement was a violation of a motion in limine, *not* objecting that the statement was a mere discovery violation, as does Hurst. ***Id.*** A motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Motion in limine*, Black's Law Dictionary (10th ed. 2014). Thus, Snelson's objection was that the evidence was inadmissible. Hurst, on the other hand, never argued that the evidence was inadmissible or objected to the testimony on inadmissibility. He merely objected that the evidence was a discovery violation. Hurst even argues on appeal that he "had no opportunity to investigate the statement so that the information could be met on cross examination." Thus, Hurst does not maintain that the evidence was inadmissible. Rather, he seems to allow that it was or may have been admissible, but simply complains that he was unprepared to counter the testimony. ***Snelson*** is also distinguishable in that this Court determined that the State meant to elicit the damaging testimony in ***Snelson***, or at the least could have anticipated it. ***Snelson***, 704 So. 2d at 455-56. The trial court found, and the record indicates, that the State did not purposely elicit the testimony in this case, nor did it anticipate such testimony.

¶25. Moreover, when the error alleged is the court's response to a discovery violation, the defense would be prudent to demonstrate how the defense "would have been helped or hindered by his defense attorney learning of the [evidence] at an earlier time." ***Adams v.***

*State*, 771 So. 2d 1010, 1014 (Miss. 2000). Hurst makes no such showing. In this case, Hurst requested a twelve minute continuance to interview the witness, and the trial court granted it. Hurst made the decision not to counter the testimony in any way, believing that this would only call more attention to it. The State readily agreed not to pursue the line of testimony, and the trial court specifically and firmly admonished the witness not to delve into any testimony about any phone call from Hurst, thus excluding further evidence on the issue. The trial court also offered to instruct the jury to disregard the testimony in another attempt to exclude the evidence, and Hurst declined the offer, citing concerns that such an instruction would draw more attention to the testimony. Furthermore, the statement that Hurst called Murray and told him he did not see anything is a statement that, while not helpful to Hurst, does not rise to the same level as *Snelson*, in which the defendant was said to have committed multiple murders. Under the specific facts of this case, the trial court did not err in its course of conduct correcting the discovery violation. It acted properly and did not abuse its discretion in refusing to order a mistrial based on a discovery violation. The court granted the defense an opportunity to interview the witness and the defense determined that it would not counter the testimony. Especially given that Hurst pointed neither the trial court nor this Court to anything that would indicate how his defense would have changed had he received the information about the phone call one day earlier (when the State arguably learned of it), it is clear that the trial court did not abuse its discretion by its course of action and sentences.

## CONCLUSION

15

¶26.   Because neither Hurst's constitutional right to a speedy trial nor his statutory right to a speedy trial was violated, and because the trial court did not abuse its discretion in its remedy of an alleged discovery violation, this Court affirms Hurst's convictions.

¶27.   **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT II: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT IV: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT V: CONVICTION OF FELON IN POSSESSION OF A FIREARM AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  SENTENCES IN COUNTS I, II, III AND IV ARE TO RUN CONCURRENTLY WITH EACH OTHER.  SENTENCE IN COUNT V IS TO RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS I, II, III, AND IV, WITH CONDITIONS.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, MAXWELL AND BEAM, JJ., CONCUR.  DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND COLEMAN, JJ.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶28.   I join the majority in result and in most of its analysis.  But I cannot join in full its statutory speedy-trial analysis, so I concur in part and in result.

**ANALYSIS**

¶29.   The majority concludes that no statutory violation occurred because good cause existed to justify the delay in Hurst's trial, and because Hurst suffered no prejudice.  While I agree that good cause for the delay precludes our finding a statutory violation in this case,

the requirement that Hurst demonstrate prejudice has no basis in the statute passed by the Legislature.

**Mississippi's speedy-trial statute does not require the accused to demonstrate prejudice.**

¶30.    The Legislature's requirements for a violation of Mississippi's "speedy trial" statute are found in Section 99-17-1, which states:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.[3]

¶31.    Except for demonstrating that more than 270 days have passed since arraignment, the statute places no burden whatsoever on the accused.  Rather, the statutory language makes clear the Legislature's intent that an accused may not be tried more than 270 days after arraignment unless "good cause be shown," and "a continuance [is] duly granted by the court."  These two requirements are the State's burden, and the statute says nothing about prejudice.

¶32.    It is unclear why this Court has strayed from a strict application of the statutory language, but one reason may be that the statute commonly is characterized as reflecting the defendant's "right" to a speedy trial.  Unlike the constitutional right to a speedy trial, the statute creates no right for the accused; rather, it imposes a burden on the State to try defendants in a timely manner.  It is no different from any other statute of limitations.

**How the "prejudice" prong of the speedy-trial statute crept into our law.**

---

[3] Miss. Code Ann. § 99-17-1 (Rev. 2015).

¶33.  In *Turner v. State*, this Court reversed a defendant's conviction based on the State's failure to bring him to trial within the 270 days allowed by Section 99-17-1.[4]  In dissent, Justice Lee expressed his personal opinion—with no citation of authority—that violation of the statute should require an accused to show prejudice:

> *I think* that the provisions of . . . Section 99-17-1 only require that an accused be discharged in denying him a speedy trial which results in prejudice and in denial of a fair trial to him.[5]

¶34.  Sixteen years later, Justice Lee's view morphed into our precedent in *Walton v. State*, when Justice Robertson, speaking for a sharply divided Court in rejecting a speedy-trial claim, stated (again without citation of any authority): "The reasoning of Justice Lee's dissent in *Turner v. State* . . . is most persuasive regarding whether a case is dismissible when tried past the allotted 270 days."[6]

**CONCLUSION**

¶35.  And so it was that a majority of the justices on this Court judicially amended Section 99-17-1 by legislating the requirement of prejudice.  And sadly, today's majority continues to follow Justice Lee's lead.  But because I believe we should interpret and apply statutes as they are written by the Legislature, rather than as judges think they should have been written, I decline to regard prejudice as a factor in an analysis of a claimed violation of Mississippi

---

[4] *Turner v. State*, 383 So. 2d 489 (Miss.1980).

[5] *Id.* at 492 (Lee, J., dissenting) (emphasis added).

[6] *Walton v. State*, 678 So. 2d 645, 650 (Miss. 1996) (citing *Turner*, 383 So. 2d at 492 (Lee, J., dissenting)).

18

Code Section 99-17-1 until such time as the Legislature joins Justice Lee's dissent in *Turner* and makes it a factor to be considered.

**KITCHENS AND COLEMAN, JJ., JOIN THIS OPINION**.