# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00309-COA

**ANTHONY GILES**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/2019 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEYS FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH ASHLEY SULSER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/23/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., LAWRENCE AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1.     On January 29, 2019, a Coahoma County Circuit Court jury convicted Anthony Giles of two counts of first-degree murder. The circuit court sentenced him to serve two consecutive life sentences in the custody of the Mississippi Department of Corrections (MDOC). Giles filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial, which the circuit court denied. Giles appeals, contending that both his constitutional and statutory rights to a speedy trial were violated. Upon review, we find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On April 2, 2015, police responded to a shooting that occurred outside of a bar in Clarksdale, Mississippi. The shooting resulted in the deaths of J.C. Miller and Anthony Stevenson. Witnesses to the murders identified Giles as a suspect, and Giles was brought to the police department for interrogation. After being read his *Miranda*[1] rights, Giles waived those rights and told police that he had gotten into a fight with Miller and Stevenson outside of the bar. Giles admitted to shooting Miller, after Miller threatened him and swung a liquor bottle at him. Giles also told police that he shot Stevenson but said that he did so only because he thought Stevenson was running to get a gun. Giles was arrested on April 13, 2015, and charged with the murders of Miller and Stevenson.

¶3.     Almost fifteen months later, on June 1, 2016, the grand jury indicted Giles on two counts of first-degree murder. Giles was arraigned on June 7, 2016. On June 15, 2016, the circuit court set Giles's case for trial during the August 2016 term of court. Two weeks later, on June 30, 2016, Giles filed a demand for a speedy trial.

¶4.     The circuit court continued Giles's original August 8, 2016 trial setting to February 6, 2017. After the continuance, Giles filed a "Motion to Dismiss Indictment Due to Violation of Defendant's Right to a Speedy Trial" on December 28, 2016. A year and a half later, on June 25, 2018, the State belatedly responded to Giles's motion. During the elapsed time, Giles's case had been continued twice more, from February 6, 2017 to August 14, 2017, and

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

then again from August 14, 2017 to February 20, 2018.[2]  That trial date likewise passed without Giles's case proceeding.

¶5.    In its response to Giles's motion to dismiss, the State argued that good cause existed for the repeated delays because of "an overcrowded court docket."  To substantiate its position, the State attached the circuit court's docket sheets as exhibits to its response. According to those docket sheets, which were the only supporting evidence the State provided, Giles's case was the twelfth setting on the August 8, 2016 docket, with a five-day first-degree-murder trial set before his trial.  Consequently, Giles's trial was reset for February 6, 2017, as the fourteenth case on the docket, with two murder cases scheduled ahead of his. Giles's trial was again continued to August 14, 2017, as the sixth setting behind a first-degree murder case, and re-set thereafter as a sixth setting on February 20, 2018.

¶6.    As a whole, the docket sheets indicate that several of the cases scheduled ahead of Giles's case were also violent crimes.  Some cases had also been pending longer than Giles's case.  However, on the February 6, 2017 trial docket, Giles's case had actually been pending longer than twelve of the thirteen cases set ahead of his.  The State offered no additional explanation or proof to explain why Giles's case was set behind the others or why other cases proceeded to trial while Giles's case was repeatedly continued.

---

[2] Because Coahoma County, like most other counties in the State, is part of a multi-county judicial district, the circuit court's terms of court are not continuous but are instead scheduled over four limited intervals during the year.  Because of the intervals between scheduled terms of court in the county (when the court is sitting in the other three counties within the judicial district), each continuance of Giles's case necessarily resulted in a delay of several months before the next possible trial setting.

¶7. On July, 18, 2018, the court entered an order denying Giles's motion to dismiss.[3] In its order, the circuit court included a detailed analysis of the *Barker*[4] factors to determine if Giles's constitutional right to a speedy trial had been violated. The court found that the "delay [was] presumptively prejudicial," but also found "good cause for the delay," "[d]ue to a heavy docket." Relying on the evidence contained in its own docket sheets, the court stated that "at times there were eleven to thirteen cases ahead of [Giles's]" and that "[t]he lack of available time on the court's docket [was] an acceptable reason for delay." The court noted that Giles "[had] been placed on the February 6, 2017 trial calendar as the fourteenth backup case despite being indicted before twelve of the cases set to be tried before [Giles]." But the court offered no further explanation for why this occurred. In its order denying Giles's motion, the circuit court also set Giles's case for a second setting on the court's trial docket on July 23, 2018.

¶8. Nonetheless, Giles's case did not go to trial in July 2018 but was again continued. Overall, his trial was rescheduled five times before Giles finally proceeded to trial on January 28, 2019. A circuit court jury ultimately convicted Giles of two counts of first-degree murder. The circuit court sentenced Giles to serve consecutive life sentences in MDOC custody without eligibility for parole. Giles filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, which the circuit court denied. Giles now appeals and

---

[3] The circuit court apparently did not hold a hearing on Giles's motion to dismiss before it entered its order denying the motion.

[4] *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (outlining the four-part balancing test courts consider when determining whether an accused's constitutional right to a speedy trial was violated).

contends that his constitutional and statutory rights to a speedy trial were violated because of the repeated delays in his case.

STANDARD OF REVIEW

¶9. "Review of a speedy trial claim encompasses a fact question of whether the trial delay rose from good cause." *DeLoach v. State*, 722 So. 2d 512, 516 (¶12) (Miss. 1998). Under the applicable standard of review, we "will uphold a decision based on substantial, credible evidence. If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse." *Id.* (citations omitted).

DISCUSSION

I. **Constitutional Right to a Speedy Trial**

¶10. Giles first argues that his constitutional right to a speedy trial was violated because 1,386 days passed between his arrest and eventual trial. The Sixth Amendment to the United States Constitution affords an accused "the right to a speedy and public trial . . . ." U.S. Const. amend. VI. This Court analyzes "four factors when a defendant alleges that his or her constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right; and (4) prejudice to the defendant." *Hardy v. State*, 137 So. 3d 289, 298 (¶26) (Miss. 2014) (applying *Barker*, 407 U.S. at 530). But "[n]one of these factors [alone] is a necessary or sufficient condition to the finding of a violation of the right to a speedy trial; they must be considered together with other relevant circumstances." *Bateman v. State*, 125 So. 3d 616, 628-29 (¶40) (Miss. 2013).

A. *Length of Delay*

¶11.    We begin our *Barker* analysis by evaluating the length of delay in Giles's case.  A full

*Barker* analysis "is warranted only if the delay is presumptively prejudicial."  *McBride v.*

*State*, 61 So. 3d 138, 142 (¶7) (Miss. 2011).

¶12.    "The Sixth Amendment speedy-trial right attaches at the time of formal indictment or

information or arrest—whichever occurs first."  *Hardy*, 137 So. 3d at 298 (¶28) (quoting *Ben*

*v. State*, 95 So. 3d 1236, 1242 (¶10) (Miss. 2012)).  Giles was arrested on April 13, 2015, and

his trial commenced on January 28, 2019—a delay of over three years and nine months.  The

Mississippi Supreme Court has held that a delay of eight months or more is presumptively

prejudicial.  *Graham v. State*, 185 So. 3d 992, 1005 (¶41) (Miss. 2016).  Accordingly, as the

circuit court correctly found, the delay in Giles's case is presumptively prejudicial, and a full

*Barker* analysis is warranted.  Still, this does not mean that actual prejudice exists, as "actual

prejudice is determined at a different point in the *Barker* analysis."  *Id*. (quoting *Johnson v.*

*State*, 68 So. 3d 1239, 1242 (¶7) (Miss. 2011)).  Rather, a presumptively prejudicial delay

simply means that we must continue our *Barker* analysis.  *Johnson*, 68 So. 3d at 1242 (¶7).

        B.      *Reason for Delay*

¶13.    Once a court determines that the delay is presumptively prejudicial, "the burden shifts

to the prosecution to produce evidence justifying the delay."  *Bateman*, 125 So. 3d at 630

(¶43).  "Different reasons [for the delay] are assigned different weights."  *Ben*, 95 So. 3d at

1242 (¶11) (citing *Barker*, 407 U.S. at 531).  "Deliberate attempts to delay the trial in order

to hamper the defense are weighed heavily against the State."  *Id*. at 142-43 (¶11).  "On the

other hand, '[a] more neutral reason such as negligence or overcrowded courts should be

6

weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id*. (quoting *Barker*, 407 U.S. at 531).

¶14. "[C]ongested trial court dockets may constitute 'good cause' for a trial's delay." *Malone v. State*, 829 So. 2d 1253, 1256 (¶7) (Miss. Ct. App. 2002) (quoting *McGhee v. State*, 657 So. 2d 799, 802 (Miss. 1995)). Here, in its order denying Giles's motion to dismiss, the circuit court found that good cause existed for the delay "[d]ue to a heavy docket" and therefore weighed this factor only slightly in Giles's favor.

¶15. The evidence in support of the circuit court's conclusion is somewhat less than ideal—in opposing Giles's motion to dismiss, the State offered only the circuit court's summary docket sheets to substantiate the reason for delay. *Cf. Hurst v. State*, 195 So. 3d 736, 742 (¶13) (Miss. 2016). In *Hurst*, the record contained two contemporaneous orders stating that the reason for each continuance was an overcrowded docket. *Id.* The supreme court noted that "[t]he record [did] not contain any motions for continuance by the State, so it [was] unknown whether the prosecutor determined which cases to take to trial and why those cases were chosen over this one, or whether a judge so determined." *Id*. However, the supreme court determined that this factor only weighed slightly in the defendant's favor "because it is clear from the record that the reason for the delay was a crowded docket." *Id*.

¶16. Here, the probative evidence that shows the reason for delay is even more sparing than in *Hurst*. Giles's record is devoid of any continuance motions or orders that explain why his case was repeatedly delayed. It is likewise unclear whether the circuit court continued

7

Giles's case sua sponte or pursuant to a party's request. Yet, like *Hurst*, "it is clear from the record that the reason for the delay was a crowded docket." *Id*.

¶17. To support its finding that its crowded docket constituted good cause for the delay in trying Giles's case, the circuit court noted "that at times there were eleven to thirteen cases ahead of [Giles's]" and that "[Giles's] case was continued to the next available term without any fault to [Giles] or the State." Although it would be much clearer if the record contained some explanation as to "whether the prosecutor determined which cases to take to trial and why those cases were chosen over this one, or whether a judge so determined," *id*., the docket sheets offered by the State support the circuit court's findings regarding its caseload and are uncontradicted by other evidence. We thus cannot conclude that the circuit court erred in finding good cause for the delay such that this factor weighed only slightly in Giles's favor and against the State.

### C. Assertion of Right to Speedy Trial

¶18. We next address Giles's assertion of his right to a speedy trial. Giles filed a demand for a speedy trial on June 30, 2016, twenty-three days after his June 7, 2016 arraignment but over fifteen months since his April 13, 2015 arrest. On appeal, Giles asserts that this factor weighs in his favor because he asserted his right to a speedy trial promptly after his arraignment.

¶19. "Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." *Bateman*, 125 So. 3d at 630 (¶49). "[A] defendant's failure to demand a speedy trial between his arrest and indictment is

8

'critical' to the analysis of a speedy-trial claim." *Id*. (citing *State v. Woodall*, 801 So. 2d 678, 684 (Miss. 2001)). This factor weighs "against a defendant who waits a significant amount of time after arrest to demand a speedy trial." *Id*. at (¶48); *see also Williams v. State*, 5 So. 3d 496, 502 (Miss. Ct. App. 2008) (holding that this factor weighed against the defendant when he waited more than a year after his arrest to assert his right to a speedy trial).

¶20. In *Bateman*, the defendant asserted "his right to a speedy trial two days after his arraignment." *Id*. at 631 (¶50). However, the supreme court noted that the defendant had already "been in State custody for approximately 310 days by that point" and that "[t]he record contain[ed] no evidence that [the defendant] requested bail, an attorney, or a speedy trial during the period between his arrest and his indictment." *Id*. The supreme court found that this factor weighed against the defendant because he had "failed to assert his right to a speedy trial in a timely manner and offered no evidence of his inability to do so." *Id*.

¶21. Similarly, Giles had been incarcerated for well over one year before he first demanded a speedy trial. Giles was arrested on April 13, 2015, and he did not file his demand for a speedy trial until June 20, 2016. As in *Bateman*, Giles points to no evidence that he was somehow unable to assert his right to a speedy trial in a timely manner after his arrest. Therefore, we find no error in the circuit court's conclusion that this factor weighed against Giles.

### D. Prejudice to the Defendant

¶22. "As for the fourth *Barker* factor, 'the appellate court is to consider prejudice to the defendant, bearing in mind three interests: (1) prevent[ing] oppressive pretrial incarceration;

(2) minimiz[ing] anxiety and concern of the accused; and (3) limit[ing] the possibility that the defense will be impaired.'" *Polk v. State*, 205 So. 3d 1157, 1166 (¶38) (Miss. Ct. App. 2016) (citing *Johnson*, 68 So. 3d at 1244 (¶16)). "[I]f a defendant is to win the fourth prong of the *Barker* analysis, he must show that he, or his defense, suffered some type of prejudice." *Johnson*, 68 So. 3d at 1244 (¶15).

¶23. Here, Giles attempts to show prejudice by asserting that because he remained incarcerated from arrest to trial, "[t]here can be no doubt whatsoever [that] memories have faded and testimony is less clear now than had Giles been brought to trial in a timely matter consistent with his constitutional rights." Giles basically reasserts that the delay in his case was presumptively prejudicial, but he offers no proof to substantiate his assertions or to show specifically *how* he or his defense was prejudiced by the delay in trial. Our supreme court has found this to be insufficient to prove prejudice. *E.g.*, *Taylor v. State*, 162 So. 3d 780, 787 (¶16) (Miss. 2015). Accordingly, the circuit court correctly found that this factor weighed against Giles.

¶24. Applying our standard of review, we cannot say that the circuit court erred in its application of the *Barker* factors or in its finding that there was good cause for the delay in trial, such that the court properly denied Giles's motion to dismiss. As a result, Giles's contention that his constitutional right to a speedy trial was violated is without merit.

## II. Statutory Right to a Speedy Trial

¶25. Giles also asserts that his distinct statutory right to a speedy trial was violated. "Our state law provides defendants with a right to a speedy trial under Mississippi Code Annotated

section 99-17-1 (Rev. 2007)." *Scott v. State*, 8 So. 3d 855, 863 (¶35) (Miss. 2008). Section

99-17-1 (Rev. 2015) provides that

> [u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

"[O]ur speedy trial statute is plain and unambiguous, and it requires that the defendant be

tried no later than 270 days after arraignment unless good cause be shown." *Polk*, 205 So.

3d at 1167 (¶44) (quoting *Perry v. State*, 419 So. 2d 194, 198 (Miss. 1982)).

¶26.    Determining a statutory speedy-trial violation requires a two-step analysis. *See*

*Jenkins v. State*, 284 So. 3d 862, 872 (¶21) (Miss. Ct. App. 2019). "The first step is to

calculate the total number of days between arraignment . . . and the actual trial." *Scott v.*

*State*, 231 So. 3d 1024, 1041 (¶69) (quoting *Sharp v. State*, 786 So. 2d 372, 378 (¶5) (Miss.

2000)). Here, Giles was arraigned on June 7, 2016, and his trial began on January 28, 2019.

This span of 965 days plainly exceeds the 270-day statutory requirement.

¶27.    "[T]he second step in determining whether the 270-day rule has been complied with

is to consider each delay separately, because only those delays attributable to the State count

toward the 270 days." *Id*. at (¶70). "Thus, we look to each delay between the arraignment

and trial and the party responsible for each delay." *Id*. Additionally, "the reason for the

delay is as important as who is responsible." *Id*. The supreme court has held that "evidence

of a congested trial docket might support a 'good cause' finding" under the statute. *Hurst*,

195 So. 3d at 743 (¶19). Finally, we are mindful that "[d]ischarge under the statute is not

required unless the statute is clearly violated and the accused has sustained prejudice by

virtue of the violation." *Id.* (citing *Guice v. State*, 952 So. 2d 129, 140 (¶23) (Miss. 2007)).

¶28. In this case, Giles asserts that his statutory right to a speedy trial was violated because the delay between his arraignment and trial is attributable to the State and that the State failed to establish good cause for the delay. The sparse record before us suggests that Giles is correct that the repeated continuances resulted from the circuit court's crowded docket, such that the delay is indeed attributable to the State. However, as detailed above, although the record does not contain any continuance motions or orders that explain the repeated delays in Giles's case, the uncontradicted evidence of "a congested trial docket" supports the circuit court's finding of good cause for the delay. In contrast, Giles offers no evidence of any actual prejudice he sustained as a result of the delay. Accordingly, we conclude that Giles's assertion that his statutory right to a speedy trial was violated is likewise without merit.

CONCLUSION

¶29. The probative evidence in this case, while thin, supports the circuit court's finding that its overcrowded docket constituted good cause for the repeated continuances of Giles's trial. In contrast, we find no evidence in the record of any actual prejudice sustained by Giles because of the delay in trial of his case. Therefore, we find no reversible error in the circuit court's denial of Giles's motion to dismiss the charges against him and no merit to Giles's assertion that he was deprived either of his constitutional or statutory right to a speedy trial.

¶30. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS AND LAWRENCE, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

12

**McCARTY, J., DISSENTING:**

¶31. A man sat in jail after arrest for 1,386 days before trial. There is no "good cause" in the record to forgive such a violation of his constitutional and statutory rights. As a result we have to reverse and render.

¶32. The State concedes that the whopping delay of forty-six months in this case was presumptively prejudicial in depriving the defendant of his constitutional right to a speedy trial. It attempts to climb itself out of this valley by claiming the docket was crowded enough to warrant "good cause." In the case cited in support of the claim that a crowded docket might be good cause, the delay was 915 days between arrest and trial. *Malone v. State*, 829 So. 2d 1253, 1256 (¶6) (Miss. Ct. App. 2002). Good cause—already stretched thin by that application—surely snaps when pulled another 471 days.

¶33. Nor is there any support in this record to allow such a horrific delay. As the majority notes, "[t]he evidence in support of the circuit court's conclusion is somewhat less than ideal—in opposing Giles's motion to dismiss, the State offered only the circuit court's summary docket sheets to substantiate the reason for delay." As the majority further details, "the probative evidence that shows the reason for delay is even more sparing" than allowed by precedent. If the State did not see fit to make its arguments in the trial court, and fill the record with material upon which a decision could rest, we should not strain to find it. Instead, we should find that the months and months of delay here were simply unexplained. "It is well settled that any unexplained trial delay tolls heavily against the State, not against the defendant." *Rowsey v. State*, 188 So. 3d 486, 494 (¶23) (Miss. 2015).

13

¶34. It is certainly true that "[c]rowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable." *Dickey v. Florida*, 398 U.S. 30, 38 (1970). Yet because *some delay is inevitable* does not mean *all delay is permissible*. The cost of the loss of a constitutional right must not be paid when there is "less than ideal" evidence for delay. The uncontested procedural posture of this case warrants too high a cost.

¶35. Even if there were legitimate reasons for delay, it does not allow such a massive delay before trial. This is why we should not place so much emphasis on the defendant's relative quiet. For "[a] defendant has no duty to bring himself to trial," period. *Barker v. Wingo*, 407 U.S. 514, 527 (1972). It is the State that brings the defendant to trial, often in tension with the defendant's desires to face a judge or jury. *See Dickey*, 398 U.S. at 37-38 ("Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial."). It remains the State's duty throughout the prosecution process to proceed with respect to the constitutional rights of the accused.[5]

¶36. In light of the undisputed delay of nearly four years, the only thing we can do is

_____

[5] While we should reverse because the allegedly crowded docket was not "good cause" sufficient to forgive delay, the inherent prejudice of sitting in jail for over three years is also prejudicial. Regardless of how other cases have viewed prejudice suffered by the defendant, in *Barker* the Supreme Court conceded a heavy delay could inherently cause harm to a defendant: "[O]bviously the disadvantages for the accused who cannot obtain his release are even more serious" because "[t]he time spent in jail awaiting trial has a detrimental impact on the individual." *Barker*, 407 U.S. at 532.

Sitting in jail pretrial "often means loss of a job" and "disrupts family life"; as a result, "[t]he time spent in jail is simply dead time." *Id*. "Imposing those consequences on anyone who has not yet been convicted is serious," since "he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Id*. at 532-33.

reverse the conviction of this defendant, and render him free to go. As the Supreme Court explained when it wrestled with the issue in *Barker*, "[t]his is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free," which would be required even if the defendant had not been tried. *Barker*, 407 U.S. at 522. While this "remedy is more serious than an exclusionary rule or a reversal for a new trial," in light of the honor we must accord our constitutional rights "it is the only possible remedy." *Id.*

¶37.   Even if we somehow could turn our backs on the constitutional rights at stake, we must follow the Legislature's command that criminal cases of this type have to be tried within 270 days. So far as it appears in the Mississippi Code, the law requires that criminal cases with indictments "shall be tried no later than two hundred seventy (270) days after the accused has been arraigned," unless there is "good cause" to forgive the delay.

¶38.   While our precedent has allowed a crowded docket to suffice as "good cause," the nearest case on crowded dockets does not come close to this one. In *Hurst v. State*, 195 So. 3d 736 (Miss. 2016), "[t]he time period between [the defendant's] arraignment and trial consisted of 321 days." *Hurst*, 195 So. 3d at 743 (¶19).

¶39.   Here, we have an eye-popping *three times* the delay in that case, hitting 965 days. Even acknowledging precedent that finds "good cause" for a crowded docket, it cannot forgive violating State law in such a brazen fashion.

¶40.   We should instead apply the law as it is written. The appellate courts of Mississippi have many times concluded that the word "shall" is mandatory. "A basic tenet of statutory construction constrains  us to conclude that, unlike the discretionary nature of 'may,' the

15

word '**shall**' is a ***mandatory*** directive." *Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994) (extreme emphasis by the Supreme Court). In that case, the Supreme Court concluded that the Legislature's usage of the word "shall" was in effect a mandate in a paternity case, since the invocation of "shall" meant "***no discretion*** is afforded the trial judge." *Id*. (extreme emphasis again by the Supreme Court itself).

¶41. In acknowledging that words must have meaning, our courts must apply the word "shall" faithfully, in accord with "our constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation." *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (¶24) (Miss. 2006) (requiring adherence to the Legislature's ninety-day presuit warning in Mississippi Tort Claims Act cases).

¶42. In *Eastlering*, the Court relied upon an earlier decision which revealed why such clearly written guidance is useful. The question involved whether a company would be allowed to appeal after it "filed its notice of appeal one day late[.]" *Tandy Elecs. Inc. v. Fletcher*, 554 So. 2d 308, 308 (Miss. 1989). The Supreme Court noted that for the sake of clarity it had adopted the Mississippi Rules of Appellate Procedure, which clearly state that a party has 30 days to appeal a decision by a trial court. *Id*. at 310. The Court found this was "a reasonable period of time within which anyone can perfect her appeal." *Id.*

¶43. In *Tandy Electronics*, the Court explained how this reasonable time period was therefore guarded by "a hard-edged, mandatory rule[.]" *Id*. It found "a number of reasons why we should enforce it as written." *Id*. First, "[s]trict enforcement has the virtue of treating alike all persons similarly situated." Second, "strict enforcement will eliminate sub

rosa grounds for decision making," since "[r]elaxed enforcement inevitably leads" to a variety of litigation instead of just following the plain language of the rule. *Id*.

¶44.    Importantly, the Court "regard[ed] convergence of declared rule and official conduct a virtue in a legal system." *Id*. "Litigants are entitled to expect that we will do what we say." *Id*. If we did not follow the very rules of the court system, then "our actions become arbitrary and officially so, and, more importantly, in this world where perception is reality to so many we open ourselves to the public perception of arbitrariness and caprice in the administration of appellate justice." *Id*. at 310-11.

¶45.    Yes, it was hard to enforce a hard-edged rule. But Justice Anderson, writing for the majority, declared that "[i]f the word gets out that we have not the stomach to enforce the rule we have declared, this is but an invitation to further . . . litigation of the sort we should discourage, litigation that is unnecessary and costly to all concerned, including the courts." *Id*. at 311.  So following a clear rule was imperative:

> If we make an exception today, the question is sure to follow, what about an appellant two days late? Five days late? Ten days late? It takes little sense to know we are going to have to draw the line somewhere or become bogged down in hearing and deciding motions to docket and dismiss. In this view the best thing to do is draw the line where we have drawn it—at thirty days—and stick with it.

*Id*. In *Tandy Electronics*, the Court found salvation in adherence to clearly written and applied rules, and in following words as they were written. *Id*. We should apply that same clarity of vision and integrity of purpose to this wayward case. By following the law as written, we avoid seemingly arbitrary decisions, and we also avoid the gymnastics required to justify presumptively prejudicial delays like the one at hand.

17

¶46. The speedy trial law is clear as it can be: the State is allowed 270 days until trial unless there is good cause. There simply was not good cause in this case—or at least, not enough to cover a delay of nearly four years. The better route, even if uphill, is that we must follow the law as written and reverse and render.

¶47. This point was made just a few weeks ago by another court dealing with a complex intersection of rights and reality. The United States Supreme Court was grappling with a Louisiana case where a defendant was "[a]ccused of a serious crime," and convicted by a non-unanimous jury, allowed in that state since 1898. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1393-94 (2020).

¶48. In finding that the Constitution required a unanimous verdict before conviction, the Court acknowledged the impact its decision would have—that "if we dared to admit in his case what we all know to be true about the Sixth Amendment, we might have to say the same in some others." *Id*. at 1408. Writing for the majority, Justice Gorsuch admitted "[e]very judge must learn to live with the fact he or she will make some mistakes" in attempting to follow the law. *Id*.

¶49. "But it is something else entirely to perpetuate something we all know to be wrong only because we fear the consequences of being right." *Id*.

¶50. Because his constitutional and statutory rights to a speedy trial were violated by the delay of four years and nine months, we should reverse and render the convictions of Anthony Giles for first-degree murder.

**McDONALD, J., JOINS THIS OPINION.**